**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **56 ASSOC., A Rhode Island Limited Liability Partnership and 57 ASSOC., A Rhode Island Limited Liability Partnership, Appellants** | : | |
| **v.** | : | **Case No. 1:07-CV-00222ML** |
| **JOSEPH M. DIORIO, Chapter 7 Trustee of ARNOLD KILBERG Appellee** | : | |

**RESPONSE OF TRUSTEE TO APPELLANTS' MOTION FOR INSTRUCTIONS**

Joseph M. DiOrio, Chapter 7 Trustee of the Estate of Arnold Kilberg (the "Trustee") responds to the Motion for Instructions of Appellants 56 Assoc. and 57 Assoc. By their motion, Appellants ask this Court for permission to engage in discussions with prospective purchasers of property co-owned by the Trustee and Appellants to "gauge" their interest in buying the property. The Trustee respectfully asks the Court to instruct Appellants that they should have no contact with prospective purchasers for the reasons set forth herein.

The Trustee holds an undivided 50% tenant in common interest in real estate located at 165 Angell Street in Providence, Rhode Island (the "Property"). Appellants 56 Assoc. and 57 Assoc. each owns an undivided 25% interest in the Property. On February 29, 2005, the Trustee filed a Complaint to Obtain Approval to Sell Real Property Pursuant to 11 U.S.C.§363(h) (the "Complaint"). Pursuant to the Complaint, the Trustee sought Bankruptcy Court approval to sell the Trustee's interest and Appellants' interests in the Property as an entirety in accordance with §363(h).

On June 14, 2007, the Bankruptcy Court entered an Order Granting Trustee's Request to Conduct a §363(h) Sale, by which the Trustee now possesses authority to sell the Trustee's and

Appellants' interest in the Property in the entirety. Judgment in favor of the Trustee entered on June 14, 2007. Appellants have appealed the Bankruptcy Court's judgment to this Court.

The Trustee, not Appellants, has been granted the sole right to negotiate a sale of the entire Property. The Trustee has secured an offer to purchase the Property from Brown University subject to certain terms and conditions, including the ability of the Trustee to convey clear title to the Property. Other parties have expressed interest in acquiring the Property in its entirety as well.

To realize the highest price for the estate from a sale the Property, the Trustee contemplates a competitive bid process under the supervision of the Court in which all qualified bidders can participate. Under §363(i), Appellants "may purchase such property at the price at which such sale is to be consummated." In other words, like Brown, Appellants, as holders of a right of first refusal, are potential bidders for the Property. As such, they should not be permitted to communicate with other bidders about the Property.

In *DDB Dorrance, LLC*, BK 05-10427 to BK 05-10433, a series of 2005 Chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Rhode Island, Judge Votolato was faced with a collusive bid situation in which one bidder had agreed to pay another bidder not to bid at a bankruptcy auction. Responding to the United States Trustee's suggestion that, in a proposed rebid of the tainted sale, "we need to start with a new process and one that includes in the bid procedures a requirement, an affirmative statement from every bidder that there has been no contact with the other bidders for purpose of colluding in the sale," Judge Votolato stated, "I think maybe we have to add some boilerplate language that appears in the documents for every bankruptcy court sale, since we know about this one, and who knows about the ones we don't know about." *Transcript of Hearing before Honorable Arthur V. Votolato,*

*August 25, 2005, p.26* (copy attached as Exhibit A). While no formal prohibition has been imposed on bidders in the Bankruptcy Court preventing bidders from engaging in pre-sale discussions about the subject property, given the lessons of *DDB Dorrance, LLC* and the provisions of §363(n), extreme caution in allowing such contact would seem to be the wisest course.

In addition, § 363(n) states:

> The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount. In addition to any recovery under the preceding sentence, the court may grant judgment for punitive damages in favor of the estate and against any such party that entered into such an agreement in willful disregard of this subsection.

The Trustee is *not* suggesting that Appellants want to talk to Brown for collusive purposes. Nevertheless, the docket in this adversary proceeding reflects numerous disputes between the Trustee and Appellants. It is clear that Appellants do not want the Property sold as an entirety. They have vigorously litigated this case every step of the way. The sale of the Property has been complicated by the Appellants' appeal and their recent lack of cooperation in showing the Property to prospective purchasers which necessitated litigation of a Motion to Compel Access in the Bankruptcy Court. *See Order* dated June 29, 2007, a true copy of which is attached as Exhibit B.

The Trustee submits that it will not benefit the estate to have Appellants meet separately with a bidder when Appellants have strenuously articulated that they do not want to sell and when they have not cooperated with the Trustee. This case is now three years old. Appellants have had ample time to try to make a deal with the Trustee or seek court approval to participate in the sale process.

Even without nefarious motives, pre-sale contact between bidders could harm the estate. For example, if a prospective bidder is discouraged from bidding due to communications with another bidder, particularly one holding a right of first refusal, the estate could realize less from a sale. The Court should discourage bidder contact that might, however innocently, have an adverse impact on the estate.

By design or not, discussions by Appellants with Brown or other prospective purchasers could, in fact, chill interest in the Property rather than enhance the chances for a higher sale price. Given a co-owner's §363(i) right to purchase the property, there would certainly be an incentive for a co-owner to either dampen interest in the Property or lower the sale price that must be matched. In this case, Appellant 56 Assoc.'s principal, Joseph Paolino, Sr., has repeatedly testified to his desire to retain the Property. Under such circumstances, the risk that bidder communication could hamper, rather than enhance, the sale process is too great despite Appellants' best intentions.

In this case, the Trustee has a written offer to purchase from Brown and expects to imminently present a purchase and sale agreement to the Court for approval. Contact between co-owner bidders and a party under contract to purchase presents a real possibility of interference with prospective or contractual relations. Litigating such a claim would be in no party's interest.

Appellants assert that they need to "solicit whether Brown has a genuine interest in purchasing the Property" and "would like the opportunity to ascertain whether there is sufficient interest in the Appellants [sic] interest in the Property which would perhaps enhance the purchase price of the Property as to each of the Trustee and the Appellants." The Trustee has been granted sole authority to sell the Property. He is charged with a fiduciary duty to enhance the purchase price to the extent reasonably possible. It is up to the Trustee, not Appellants, to

gauge the interest of bidders and enhance the sale price. He neither needs nor wants Appellants' "assistance" in this regard. Appellants can review Brown's offer and, by participating in the court approval and bid process, can "gauge" the interest of Brown or any other bidder.

For these reasons, the Trustee respectfully asks the Court to instruct Appellants that they should have no communications about the Property with Brown or any other prospective bidder for the Property.

Respectfully Submitted:

/s/ Gardner H. Palmer, Jr.

Gardner H. Palmer, Jr. (#3707)
Law Office of Joseph M. DiOrio
10 Dorrance Street, Suite 1200
Providence, RI 02903
401 632-0911
401 632-0751 (Fax)
ghpalmer@dioriolaw.com

Date: July 11, 2007

**CERTIFICATION**

I hereby certify that, on the 11th day of July, 2007, I caused to be served the within document, either electronically through the CM/ECF system or by first class mail, postage prepaid, to the following:

William J. Delaney, Esq.
Tillinghast Licht LLP
10 Weybosset Street
Providence, RI 02903

Richard A. Licht, Esq.
Tillinghast Licht LLP
10 Weybosset Street
Providence, RI 02903

/s/ Gardner H. Palmer, Jr.