# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE: | Case No. 05-10427 |
| | Adv. No. |
| DDB DORRANCE, LLC, | |
| | U.S. Bankruptcy Court |
| | 380 Westminster Mall |
| Debtor. | Providence, RI 02903 |
| | August 25, 2005 |
| | 10:30 a.m. |

TRANSCRIPT OF RECORDED PROCEEDINGS
BEFORE HONORABLE ARTHUR V. VOTOLATO
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor: United States Trustee's Office
By: GARY L. DONAHUE, ESQ.
10 Dorrance Street, 9th Floor
Providence, RI 02903

For the Trustee: Boyajian Harrington & Richardson
By: ANDREW S. RICHARDSON, ESQ.
By: JOHN BOYAJIAN, ESQ.
182 Waterman Street
Providence, RI 02906

Audio Operator: Joseph Wilkicki

Proceedings recorded by electronic sound recording, transcript Produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@optonline.net**

**(609)586-2311 Fax No. (609) 587-3599**

number. That they still want to consummate this sale. So, I believe and I have not gotten their agreement yet, so I want to make that clear, Judge, but I believe there's a reasonable chance that they would agree to be bound by their bid but to allow the re-advertising, re-notice, etcetera, to take place.

THE COURT: And, start the bidding at 4,025,000, is that?

MR. RICHARDSON: That's right. That's right.

THE COURT: Okay. Mr. Donahue.

MR. DONAHUE: Good morning, Your Honor, Gary Donahue for the United States Trustee. Your Honor, there's somewhat of a conflict here between the economic interest and the public interest in this case. The public interest has to override the economic interest of the creditors. I've met with all of the economic constituencies yesterday with Mr. Richardson and they clearly want to get paid because they believe this is a good sale. The problem is that the public confidence in the administration of justice in the Bankruptcy Court in Rhode Island has to be shaken by this agreement.

Judge, I've seen a copy of the agreement, it was provided to Mr. Richardson yesterday by one of the bidders, and I've gone through it, and it's shocking. And, some of the parts include, it specifically mentions the existence of the auction and this Court. It specifically mentions no bidding and a no bid payment of $400,000. It specifically mentions

it's confidential, when the process is supposed to be open and competitive bidding.

THE COURT: Yes, well it's not confidential any more because I have a copy of it, I think probably we should share it with anybody who's interested in this case. So, I think it probably is going to be somebody, maybe you as Trustee's exhibit, or the Court's exhibit in one.

MR. DONAHUE: I'm going to put it in, Judge. I have it right here. I don't have a witness to authenticate it. I only offer it because I got it from Mr. Richardson.

THE COURT: Yes. I didn't want my silence to imply that I have not seen this. I certainly have.

MR. DONAHUE: Well, I got it yesterday from Mr. Richardson who received it I believe from counsel from one of the bidders.

UNIDENTIFIED ATTORNEY: Can I just state for the record, just so it's clear, that Dunkin Donuts does not have a copy of the agreement and I don't believe that any of the other creditors here have a copy of the agreement. And, if someone thinks differently they can correct me. Thanks.

MR. DONAHUE: Correct, Your Honor.

THE COURT: I understand that. And, in anticipation of your curiosity we have copies for you. Okay? Now, you can go ahead, Gary.

MR. DONAHUE: Thank you, Judge. I appreciate that

Mr. Richardson believes he has achieved fair value, Judge, but when you look at the agreement and the mechanics of how the agreement works, to say it didn't control the outcome of the auction I think is a real leap. Because if you look at the agreement with the overbids and the $400,000 alleged payment or agreed to payment for no bid, you come up to $3,975,000. And, the ultimate bid was 4,025,000. That's not exactly an aggressive difference, an aggressive delta when you're looking at a four million dollar sale.

Judge, there is no way that you could make a 363(n) finding of good faith. The Trustee can't offer any evidence that this is a good sale because this is a most unusual auction you'll ever have. The successful bidder isn't here. I've never been to a bankruptcy auction, Judge, where the bidder isn't present. And, more troubling, Judge, is this is the agreement that we know about. I have no idea whether there's other agreements. But, I know we have assets that apparently are worth just over four million dollars and only two bidders, and an agreement between those two bidders. The public interest, I think, demands the Court deny the approval of the sale and it be started over again.

There's a question in our mind, Your Honor, whether or not these bidders can even partake in the subsequent bidding. I don't know. We haven't come to that, it's not before you today. All we can say is that this process has been

tainted and it should be denied.

THE COURT: What about Mr. Richardson's, I think a recommendation is what it was, that we do re-advertise that the thing hopefully be opened up to the world, and that we start bidding at 4,025,000?

MR. DONAHUE: If he can get that agreement, Judge, that's fine. Parties in interest, including the U.S. Trustee if she desires, can file an objection to that sale. I don't know what we're going to do prospectively, I can't tell you. All that I can tell you, I encourage him, if he can get someone to do an agreement for four million, to start the bidding at four million, I think that's a great idea. But, we need to start with a new process and one that includes in the bid procedures a requirement, an affirmative statement from every bidder that there has been no contact with the other bidders for purpose of colluding in the sale. Some affirmative representation has to be made to the Court so the public can have confidence and you can have confidence that the sale was done at arms length.

THE COURT: Yes. I think maybe we have to add some boilerplate language that appears in the documents for every bankruptcy court sale, since we know about this one, and who knows about the ones we don't know about.

MR. DONAHUE: Well, who knows what we don't know, Judge.

THE COURT: Yes.

MR. DONAHUE: But, all I can say is, we only had two bidders, it is a viable asset. I think that's a prudent idea to change the language in the notice of intended sale, and the solicitations that go out. Now, I appreciate that the creditors who stand ready if this sale were approved today receive a hundred percent may feel that they're being punished, but the conduct is not on the part of Mr. Richardson, the U.S. Trustee, or the Court; the bad acts were done by these two bidders.

This was, whether or not you think it controlled the agreement, it was a collusive agreement. It was agreed to the day before the sale. So, to the extent that the $4,025,000 is not reached we certainly hope that the Trustee will be able to recover any difference. There are remedies for th Trustee under 363(n) when there's been collusive bidding under Bankruptcy Code, and there are the common law causes of action that he could bring if the estate suffers harm. It's not mutually exclusive, in other words, Judge, you can deny it, I hope you'll deny it, and there can still be a great economic result but not today.

THE COURT: Okay. Who else would like to be heard?

MR. BRAUNSTEIN: Your Honor, Alan Braunstein for Lawrence Savings Bank. We're prepared to follow along with the Trustee's recommendation with one caveat. And, I think we need