COPY

# REAL ESTATE PURCHASE AGREEMENT

This REAL ESTATE PURCHASE AGREEMENT (the "Agreement"), is made and entered into by and between JOSEPH M. DIORIO, in his capacity as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Arnold Kilberg, Bk. No. 04-10632 (hereinafter referred to as the "Bankruptcy Estate"), and not individually, with a mailing address for purposes of this Agreement of Law Office of Joseph M. DiOrio, Inc., 10 Dorrance Street, Suite 1200, Providence, Rhode Island 02903, (hereinafter referred to as the "Seller") and Brown University, a not-for-profit corporation established by charter under the laws of the State of Rhode Island, with a mailing address for the purposes of this Agreement of Office of Real Estate and Administrative Services, BROWN UNIVERSITY, Box 1902, Providence, Rhode Island 02912 (the "Buyer"), or its nominee.

## WITNESSETH THAT

1. PREMISES AND PURCHASE PRICE

Trustee is the holder of a fifty percent (50%) tenant-in-common interest in the hereinafter defined "Premises" located at *165* Angell Street, Providence, Rhode Island. On June 14, 2007, the United States Bankruptcy Court for the District of Rhode Island (the "Court" or the "Bankruptcy Court") entered its Order Granting Trustee's Request to Conduct a §363(h) Sale (the "Sale Order") pursuant to which the Trustee was given authority to sell the Premises free of the interests of 56 Associates, LLP ("56 Associates"), the holder of a twenty-five percent (25%) tenant-in-common interest in the Premises, and 57 Associates, LLP ("57 Associates"), the holder of a twenty-five percent (25%) tenant-in-common interest in the Premises.

Trustee agrees to sell and convey to Buyer, and Buyer agrees to purchase, free and clear of liens and mortgages, upon the terms and conditions hereinafter set forth, all of Seller's right, title and interest in and to the Trustee's fifty percent (50%) tenant-in-common interest, and all of the right, title and interest of 56 Associates and 57 Associates, in and to their respective twenty-five percent (25%) tenant-in-common interests in and to that certain real estate with the buildings and improvements thereon and appurtenances thereto located at 165 Angell Street, Providence, Rhode Island (collectively, the "Premises"), and more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof, for the purchase price of One Million Seven Hundred Thousand ($1,700,000.00) Dollars (the "Purchase Price"), of which a deposit (the "Deposit") of One Hundred Twenty-Seven Thousand Five Hundred ($127,500.00) Dollars has been paid this day.

2. DATE OF THIS AGREEMENT

The date of this Agreement shall be the date on which the Seller signs this Agreement as set forth immediately under the Seller's signature below.



ALL-STATE LEGAL® Exhibit A

3. TITLE

Conveyance of the Premises shall be made by a Trustee's Deed (the "Deed") in customary form as attached hereto as Exhibit B, without covenants, warranties or representations of any kind whatsoever, conveying to the Buyer all of the Seller's right, title and interest as a tenant-in-common in and to the Premises, and all of the right, title and interest of 56 Associates and 57 Associates, as tenants-in-common in and to the Premises, free and clear of all liens, mortgages, security interests, monetary claims, encumbrances, and like monetary interests, including, but not limited to, any and all statutory liens, judgments liens or claims for municipal real estate or tangible property taxes. Title to the Premises shall be good and marketable and insurable by a nationally recognized title insurance company with an owner's title insurance policy at usual and customary premium rates. The conveyance of the Premises shall, however, be subject to all restrictions, easements and conditions of record, and subject to any state of facts which would be shown by an accurate survey.

4. POSSESSION

Upon conveyance of title to the Premises, full possession of the Premises, subject to the rights of tenants to use and occupancy pursuant to existing leases and month to month tenancies, shall be delivered to the Buyer in the same condition in which the same are as of the date of Buyer's signature on this Agreement, reasonable use and wear and damage by fire, the elements or other casualty otherwise covered by insurance excepted.

5. PURCHASE PRICE

The agreed total Purchase Price for the Premises is as set forth and defined in Section 1 hereof.

6. THE CLOSING

The Closing (the "Closing") of the Premises is to be held at 10:00 A.M. on December 15, 2007 (the "Closing Date"), or on such earlier date as the Seller and the Buyer may agree. At the Closing, Buyer shall pay the remainder of the Purchase Price set forth in Section 1 hereof by bank or certified check or immediately available funds drawn on a local bank and made payable to Joseph M. DiOrio, Chapter 7 Trustee of the Bankruptcy Estate of Arnold Kilberg. It is agreed and understood that TIME IS OF THE ESSENCE of this Agreement. At Closing, Buyer shall provide Seller with a copy of the Municipal Lien Certificate or other evidence of payment of taxes reasonably satisfactory to the Buyer, if any, obtained by Buyer. At Closing, the Buyer's bank or certified check in the amount of the net proceeds of the sale of the Premises to Buyer as reflected on the Settlement Statement, subject to post-closing adjustments, if any, (to the extent that Seller is due any amount) shall be delivered to the Seller upon recording of the Deed. The Seller shall deliver to 56 Associates and 57 Associates their respective shares of the sale proceeds. Buyer agrees to record the Deed in the appropriate recording office forthwith as soon as reasonably possible after delivery of the same. Buyer shall notify Seller forthwith of the recording of the Deed. This provision shall be deemed to survive the Closing.

7. ADJUSTMENTS

7.1 Charges, Assessments and Apportionable Items Other than Taxes. Rents, fuel, water charges, sewer assessment charges and sewer use charges, if any, shall be apportioned among Seller, 56 Associates, 57 Associates, and Buyer as of the date of delivery of the Deed based upon the periods (pre or post Closing) to which such charges relate. In the event that the actual charges are not available at the time of Closing, such charges shall be as estimated on the basis of the best information available at the time of Closing, and the net amounts thereof shall be added to or deducted from the Purchase Price, as the case may be. Any assessments and charges constituting a lien on the Premises which are payable over a period of more than one (1) year shall be apportioned in such manner that all installments due during the appropriate calendar or municipal fiscal years prior to the year the Deed is delivered shall be paid by Seller, 56 Associates, and 57 Associates, and any installment due in the year the Deed is delivered shall be apportioned in such a manner that Seller, 56 Associates, and 57 Associates shall pay that portion thereof which corresponds to the portion of said year which has expired on the date of delivery of the Deed, and the Buyer shall pay or assume the balance of such assessment and charges. Seller, 56 Associates, and 57 Associates shall be responsible and shall pay their respective shares of all expenses and utility charges for all utilities serving the Premises up to the date of Closing.

7.2 Taxes. On or before the Closing, Seller, 56 Associates and 57 Associates, shall pay all real estate taxes as well as other taxes and assessments which are then due and payable and constitute a lien upon the Premises for any period prior to the then current year in which the date of delivery of the Deed occurs. On the Closing Date, Real Estate taxes, tangible property taxes, and fire district taxes assessed upon the Premises as of December 31 of the year immediately preceding the year in which the delivery of the Deed occurs, applicable to the following year, shall be apportioned on a calendar year basis, in accordance with the manner such taxes are customarily prorated in the municipality where the Premises are located, such that Seller, 56 Associates, and 57 Associates shall pay, or, at Seller's election, allow to Buyer as a credit against the Purchase Price, that portion thereof which corresponds to the portion of said year which has expired on the date of delivery of the Deed, and Buyer shall pay or assume the balance. Seller, 56 Associates, and 57 Associates shall pay or, at Seller's election, allow to Buyer as a credit against the Purchase Price, all other taxes which are a lien upon the Premises. In the event that at the time of delivery of the Deed the amount of such taxes shall not be definitely fixed and ascertainable, it shall, for the purposes of making such apportionment, be assumed that the amount of such taxes will be identical with those of the next prior assessment. Any further adjustment, if necessary, shall be made by the parties when the amount of said taxes is known. The Seller shall be entitled, at the Seller's discretion, to use any portion or all of the Purchase Price to pay any of the foregoing or any other liens or encumbrances against the Premises. In the event that a portion or all of the Purchase Price is used to pay any of the foregoing, the settlement agent shall provide copies of receipts or other evidence of payment satisfactory to the Seller within forty-eight (48) hours of the recording of the Deed.

8. EXTENSION OF CLOSING

If the Seller shall be unable to give title to Buyer, or to make conveyance, or to deliver possession of the Premises, all as in accordance with this Agreement, or if at the time of the

Closing, the Premises do not conform with the provisions of this Agreement, then the Seller shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the Premises conform to the provisions hereof, as the case may be, in which event the Closing hereunder shall be extended by thirty (30) days. It is understood and agreed that Seller shall not be under any obligation to attempt to cure by litigation or otherwise any defect which may be found to exist on the title to the Premises or to remove any encumbrances upon the title to the Premises not voluntarily placed thereon by the Seller subsequent to the date hereof or to correct any violations of subdivision, plat, zoning, building, minimum housing standard regulations or other similar restrictions or to otherwise spend more than Five Thousand ($5,000.00) Dollars to cure any such defect. This paragraph is also not intended to apply to any damage to the Premises caused by fire or other casualty, as to which the provisions of Section 10 shall apply. The Buyer may, however, with the Seller's consent, elect to waive any such defects and accept such title to the Premises as the Seller is able to convey, without any warranty as to such conditions and without a reduction of the Purchase Price, and the acceptance of the Deed by the Buyer shall be deemed full performance and discharge of all the obligations of the Seller under this Agreement. If, at the end of the thirty (30) day period, Seller remains unable to give title to Buyer, or to make conveyance, or to deliver possession of the Premises, all as in accordance with this Agreement, Buyer shall have the option of extending the Closing an additional thirty (30) days to enable Seller at no additional expense to Seller to remove any defects in title, make the Premises conform to the provisions hereof and deliver possession as provided herein, or terminate this Agreement, whereupon the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder. This Buyer's right of extension is in addition to the Seller's right to extend the date of the Closing pursuant to Section 32 of this Agreement.

9. SELLERS' TENDER OF DEED

Except as otherwise expressly set forth herein, the tender of the Deed by the Seller and acceptance by Buyer shall be deemed full performance and discharge of every agreement and obligation of the Seller contained or expressed in this Agreement. The Seller shall be responsible for the payment of all statutory recording fees.

10. INSURANCE

Until delivery of the Deed to Buyer, the buildings on the Premises as applicable shall be insured by Seller and the tenants of the Premises against loss by fire under the same policy as exists at present. In case of any loss or other casualty occurring after Court approval of this Agreement and prior to delivery of the Deed in an amount less than Twenty-Five Thousand ($25,000.00) Dollars occurring between the date of this Agreement and the delivery of the Deed, Buyer shall remain bound to purchase the Premises and Seller agrees to pay over or assign to Buyer upon payment of the remainder of the Purchase Price, all sums recovered or recoverable on account of said insurance, plus the deductible amount, if any, unless the Seller shall have restored the Premises to their former condition in which event the proceeds shall be retained by Seller. In the event of any loss or casualty occurring after Court approval of this Agreement and prior to delivery of the Deed in an amount in excess of Twenty Five Thousand ($25,000.00) Dollars, the Seller shall have the option of (a) restoring the Premises to the same condition in which they

were on the date of this Agreement, reasonable wear and tear excepted; (b) reducing the amount of the Purchase Price as may be agreed to by the parties and approved by the Court; or (c) seeking a determination from the Court as to the treatment of such loss or casualty; provided, however, that in the event of such damage in excess of Twenty Five Thousand ($25,000.00) Dollars, Buyer may terminate this Agreement by giving written notice of its election to terminate within ten (10) days of Buyer's receipt of written notice from Seller that a loss of casualty in such amount has occurred.

11. DEFAULT

If the Buyer shall default in the performance of Buyer's obligations hereunder, the Seller shall have the right to retain the deposit and resell the Premises without notice to the Buyer and no other damages at law or in equity. If Seller shall default in the performance of Seller's obligations hereunder, the Buyer shall be entitled to the Deposit and no other damages at law or in equity.

12. BROKERS AND AGENTS

Buyer warrants and represents that no real estate broker other than Hayes & Sherry initiated or otherwise brought about this transaction. Buyer agrees to indemnify the Seller against, and shall hold him harmless from any and all cost, expense or liability based upon or related to a claim for a brokerage commission or finders fees in connection with the transaction contemplated hereby to the extent such liability is based upon arrangements or agreements made or claimed by third parties to have been made by or on behalf of the Buyer, and not disclosed in this Agreement. Seller shall pay the commission due to Hayes & Sherry with respect to the Seller's interest in the Premises after Court approval.

13. NOTICES

All notices as required in this Agreement must be in writing. Any notice shall be deemed to have been properly given, rendered or made if sent by registered or certified mail or by Federal Express or other comparable commercial overnight delivery service, postage prepaid, addressed to the other party at the addresses set forth in the first paragraph of this Agreement and shall be deemed to have been given, rendered or made on the day so delivered; or in the case of failure to deliver by reason of changed address of which no notice was given, or refusal to accept delivery, as of the date of such failure as indicated on the return receipt or by notice of the United States Post Office.

14. BUYER REQUIRED TO COMPLY WITH ZONING

Buyer is obligated to comply with any and all state and local real estate ordinances, statutes and/or regulations, commercial or otherwise.

15. RADON GAS

Radon gas has been determined to exist in the State of Rhode Island. The Premises contain residential dwelling units. The Buyer acknowledges that the Seller has no obligation whatsoever to perform any tests for radon, and that such testing, if any, shall be solely at Buyer's expense. The Seller makes no representation whatsoever concerning the existence or absence of radon in the Premises.

16. LEAD POISONING DISCLOSURE

The Premises contain residential dwelling units. The Buyer acknowledges that the Seller shall have no obligation whatsoever to perform any risk assessments or inspections for lead-based paint hazards within the Premises. Any such inspections or risk assessments shall be done solely at the Buyer's election and expense. Buyer acknowledges that Buyer has been advised that Seller has no reports or information concerning lead based hazards within the Premises, and that Seller makes no representations concerning the existence or absence of lead-based paint within the Premises.

17. [Intentionally Deleted]

18. CLOSING/CONVEYANCE NOT SUBJECT TO ANY CONTINGENCIES.

Subject to the Buyer's rights and ability to conduct due diligence inspections as set forth in <u>Section 24</u> and subject to the rights of Buyer under and the conditions set forth in the provisions of <u>Section 26</u>, Buyer expressly acknowledges and agrees that neither the Closing nor the conveyance contemplated hereunder are conditioned in any way whatsoever upon the Buyer or the Seller complying with any contingencies, including, but not limited to Buyer financing, structural or environmental inspections, zoning, licensing and/or any other contingency of any kind or nature relative to the Premises.

19. WETLAND DISCLOSURE

All or part of the Premises may have been previously determined by the Rhode Island Department of Environmental Management to be a wetland, bank, bog, salt marsh, meadow, or flat as these terms are defined in Chapter 1, Section 20 of Title 2 of the Rhode Island General Laws. The parties hereto acknowledge that it shall be Buyer's sole responsibility to conduct any independent examination to determine whether the Premises are in an area determined to be a wetlands pursuant to such statutory provision.

20. [Intentionally Deleted]

21. NO WARRANTIES AND REPRESENTATIONS AND NO RELIANCE ON OTHERS.

Buyer has entered into this Agreement based on Buyer's independent review and investigation of the Premises and not on any representation made by the Seller or any of Seller's agents or representatives. Buyer specifically acknowledges that the Premises shall be sold to Buyer "as

is", "where is", and "with all faults" and that no warranties or representations or covenants of any kind, express or implied, have been or will be made by Seller or any other party with respect to the physical, operating or any other condition of the Premises, or repair of the Premises, or utilities or sewer servicing the Premises, and no reliance is made by the Buyer upon any statements or representations of Seller not made in this Agreement.

22. PROHIBITION AGAINST RECORDING

This Agreement may not be recorded in the Records of Land Evidence of the municipality in which the Premises are located. IN THE EVENT OF ANY RECORDING OF THIS AGREEMENT BY BUYER, AT THE OPTION OF THE SELLER, THE BUYER WILL CONCLUSIVELY BE DEEMED IN DEFAULT HEREUNDER ENTITLING THE SELLER TO EXERCISE ALL RIGHTS AND REMEDIES HEREUNDER FOR BUYER'S DEFAULT and any third party may conclusively rely upon an affidavit executed and recorded by the Seller in said Land Evidence Records stating the Seller has elected to hold the Buyer in default for such recording, as conclusively establishing that the Buyer has no further right, title, or interest under this Agreement or to the Premises, all of which will be deemed released and conveyed to Seller. Any default by Buyer under the terms of this provision, shall be subject to the provisions of Section 11.

23. NO PERSONAL LIABILITY

Notwithstanding anything herein to the contrary, the Trustee's execution and performance of this Agreement is solely in his capacity as Trustee and shall not render the Trustee personally liable in any way whatsoever.

24. DUE DILIGENCE

Notwithstanding anything to the contrary herein, Buyer shall have the right to re-inspect the Premises during the twenty-five (25) days immediately preceding the date of the Closing in order to determine that no material adverse change has occurred to the physical or financial condition of the Premises since the Buyer performed its due diligence investigation of the Premises in November of 2006. Such re-inspection shall include, but not be limited to surveys, title examinations, structural inspections, environmental and hazardous waste inspections, lead paint inspections, radon inspections, review of leases and leasing arrangements, zoning and all business and financial agreements, including those with tenants. If Buyer determines as a result of its re-inspection that a material adverse change has occurred in the Premises, then Buyer shall be under no obligation to purchase the Premises and may terminate this Agreement, provided, however, that Buyer must provide Seller at his address set forth above with written notice of its election not to purchase the Premises within five (5) days prior to the date of the Closing and evidence of such material adverse change.

25. MANAGEMENT OF THE PROPERTY

From the date hereof until the delivery of the Deed to the Premises, Seller will provide Buyer with an opportunity to review and comment on all material decisions concerning the leasing of

the Premises and the administration of the leases of the Premises, and Seller agrees not to make any such material decision without the prior review of Buyer. It is understood and agreed by Buyer, however, that Seller does not hold a majority interest in the Premises. Seller shall exercise his independent business judgment notwithstanding Buyer's comments. Seller shall notify, Buyer of any decisions made that materially affect the use, management, operation or structure of the Premises and, to the extent that said decisions, adversely impact the use, management, operation or structure, or result in costs to be paid or assumed by Buyer, Buyer shall have the option of terminating this Agreement in which event the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder.

26. REQUIRED APPROVALS: 56 Associates and 57 Associates have appealed the Sale Order to the United States District Court for the District of Rhode Island (the "District Court") in the matter identified as Case No. 1:07-cv-00222 (the "Appellate Proceeding"). Anything to the contrary herein notwithstanding, the conveyance and transfer of the Premises is expressly made subject to and conditioned upon:

26.1 Court Approval. Seller obtaining approval of the District Court and/or other court of competent jurisdiction after hearing with notice to all interested parties, authorizing and ordering the sale free and clear of all such liens, mortgages, security interests, claims, encumbrances and interests. If such approval is not obtained by Seller, Seller must immediately give written notice thereof to Buyer and this Agreement shall terminate upon receipt of such notice by Buyer, the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder. Buyer acknowledges and understands that Seller is obligated to submit to the District Court or other court of competent jurisdiction for its review and consideration any other offers for the Premises received by the Seller subsequent to this Agreement for a purchase price higher than or on more advantageous terms than those set forth herein for the Court's review and consideration. Buyer further acknowledges and agrees that Seller will solicit higher and better offers and may advertise the sale in newspapers and/or trade magazines. Buyer shall be under no obligation to purchase the Premises at such higher price or on more advantageous terms than those set forth herein. In the event that the District Court so directs or if the Appellate Proceeding is resolved pursuant to a final order of the District Court or other court of competent jurisdiction with the time limit for an appeal having expired with no appeal taken, and the Bankruptcy Court has jurisdiction over this Sale, the approval of the Bankruptcy Court will be required and all of the remaining terms and conditions of this Section 26.1 will apply. Notwithstanding anything to the contrary herein, Buyer's obligation to purchase the Premises is subject to Seller having obtained a final order of the District Court or other court of competent jurisdiction authorizing Seller to sell the Premises free of the interests of 56 Associates and 57 Associates with no further right of appeal by the holders of said interests.

27. INTEGRATION

The parties hereto agree that this Agreement contains the entire agreement between the parties and that it is subject to no understandings, conditions or representations other than those expressly stated herein. Any modification of this Agreement or additional obligations assumed by either party in connection with this Agreement shall be binding only if evidenced in writing and signed by each party or by an authorized representative of each party.

28. PARTIAL INVALIDITY

The invalidity of one or more phrases, sentences, clauses, articles or paragraphs contained in this Agreement shall not affect the remaining portions of this Agreement or any part thereof, and in the event that one or more of the phrases, sentences, clauses, articles or paragraphs contained in this Agreement shall be declared invalid by the final order, decree or judgment of a court of competent jurisdiction, this Agreement shall be construed as if such invalid phrases, sentences, clauses, articles or paragraphs had not been inserted in this Agreement.

29. GOVERNING LAW

This Agreement shall be governed by the laws of the State of Rhode Island as to matters that are the subject of state law and shall be governed by federal law as to matters that are governed by federal law and the District Court or the Bankruptcy Court, whichever is applicable, shall adjudicate all disputes hereunder.

30. CAPTIONS

The captions or headings of the paragraphs hereof are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Agreement.

31. COUNTERPARTS

This Agreement may be executed in one or more counterparts any or all of which shall constitute one and the same instrument.

32. FURTHER EXTENSION OF CLOSING

In the event that (i) the District Court or other court of competent jurisdiction stays the enforcement of the Sale Order, or (ii) the Sale Order is not a final order with no further right of appeal by 56 Associates and 57 Associates, Seller, upon written notice to the Buyer on or before November 30, 2007, may extend the date of the Closing to April 30, 2008, in order to seek appropriate approval of a court of competent jurisdiction to consummate the sale of the Premises pursuant to this Agreement and to resolve the appeal of 56 Associates and 57 Associates by a final order with no further right of appeal by 56 Associates and 57 Associates. The obligations of the Buyer to consummate this transaction shall remain in full force and effect notwithstanding the issuance of any stay by the District Court or any other court of competent jurisdiction, and Seller shall have until December 15, 2007, or if extended pursuant to this Section 32, until April 30, 2008, to cause the District Court or other court of competent jurisdiction to lift any stay so that the sale contemplated hereunder may be consummated and to resolve such appeal by a final order with no further right of appeal by 56 Associates and 57 Associates. In the event that the Sale Order is not a final order with no further right of appeal by 56 Associates and 57 Associates by April 30, 2008, Buyer and Seller may agree in writing to extend further the date of the Closing to a date agreed to by Buyer and Seller. If the date of the Closing is not so extended, the obligations of Buyer and Seller shall cease, the Deposit shall be returned, and this Agreement shall be null and void and of no force and effect.

34. RIGHT OF FIRST REFUSAL

Buyer acknowledges and agrees that 56 Associates and 57 Associates each hold a right of first refusal as set forth in 11 U.S.C. §363(i).

35. INABILITY OF SELLER TO CONVEY TITLE DUE TO APPEAL

In the event that the Seller is unable to convey title to the Premises due to the imposition of a stay by the District Court or other court having jurisdiction or a reversal of the Sale Order by the District Court or other court having jurisdiction, or the inability to obtain a decision from the District Court or other court having jurisdiction which stay, reversal, or lack of decision is in effect on December 31, 2007, or if the date of Closing is extended by the Seller, on April 30, 2008, then the parties' respective obligations hereunder and this Agreement shall be terminated and shall be of no force and effect.

WITNESS the signatures of the above parties on the date set forth below.

SELLER:

COPY

By: ______________________________

WITNESS

Joseph M. DiOrio, in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Arnold Kilberg, and not individually

Date: ______________________________

BUYER:
BROWN UNIVERSITY

Kathleen Furtado
WITNESS

By: ______________________________

Name: Elizabeth C. Huidekoper
Title: Exec. VP for Finance and Administration

**EXHIBIT A**

Legal Description

(Legal Description)

PARCEL I: THAT LOT OF LAND, WITH ALL BUILDINGS AND IMPROVEMENTS THEREON, SITUATED IN THE CITY OF PROVIDENCE IN THE STATE OF RHODE ISLAND, ON ANGELL STREET A SHORT DISTANCE WESTERLY FROM THAYER STREET, BOUNDING NORTHERLY ON SAID ANGELL STREET, EASTERLY ON LAND NOW OR LATELY OF HENRY F. MCCUSKER AND WIFE, SOUTHERLY ON FONES ALLEY, AND WESTERLY ON LAND NOW OR LATELY OF CHURCHILL HOUSE CORPORATION. SAID LOT MEASURES FORTY (40) FEET ON ANGELL STREET AND HOLDING THAT WIDTH EXTENDS BACK THEREFROM ABOUT ONE HUNDRED SIXTEEN (116) FEET.

SAID LOT CORRESPONDS TO OR SUBSTANTIALLY TO LOT NO. 38 (THIRTY-EIGHT) ON THAT PLAT ENTITLED, "A PLAN OF PART OF THE ESTATES OWNED BY THE HEIRS OF NATHAN & RUFUS WATERMAN SURVEYED & PLATTED BY S. BARRETT CUSHING 1833", RECORDED IN THE OFFICE OF THE RECORDED OF DEEDS IN SAID CITY OF PROVIDENCE IN PLAT BOOK 1 AT PAGE 4 AND (COPY) ON PLAT CARD NO. 2.

THIS CONVEYANCE IS MADE SUBJECT TO A TUNNEL EASEMENT GRANTED BY JOSEPH M. BENNETT TO THE RHODE ISLAND COMPANY BY DEED DATED OCTOBER 9, 1914 AND RECORDED IN SAID RECORDS IN BOOK 543 AT PAGE 436.

PARCEL II: THAT STRIP OF LAND, SITUATED ON THE SOUTHERLY SIDE OF ANGELL STREET IN THE CITY OF PROVIDENCE IN THE STATE OF RHODE ISLAND, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT IN THE SOUTHERLY LINE OF ANGELL STREET AT THE NORTHWESTERLY CORNER OF LOT NO. 39 (THIRTY-NINE) ON THAT PLAT ENTITLED "PLOT OF PART OF AN ESTATE OWNED BY THE HEIRS OF NATHAN AND RUFUS WATERMAN SURVEYED AND PLOTTED MARCH 16, 1849", RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS IN SAID CITY OF PROVIDENCE IN PLAT BOOK 3 AT PAGE 32 AND (COPY) ON PLAT CARD NO. 82 AND AT THE NORTHEASTERLY CORNER OF LAND NOW OR LATELY OF CHESTNUT RIDGE CORP., SAID POINT BEING ABOUT ONE HUNDRED TEN (110) FEET WESTERLY OF THE WESTERLY LINE OF THAYER STREET; THENCE EASTERLY BOUNDING NORTHERLY ON ANGELL STREET TWO AND 06/100 (2.06) FEET TO A CORNER; THENCE TURNING AN INTERIOR ANGEL OF 89° 10' AND RUNNING SOUTHERLY SIXTY-FIVE AND 78/100 (65.78) FEET TO A CORNER; THENCE TURNING AN INTERIOR ANGEL OF 90° 50" AND RUNNING WESTERLY ONE AND 10/100 (1.10) FEET TO SAID LAND NOW OR LATELY OF CHESTNUT RIDGE CORP.; THENCE TURNING AT RIGHT ANGELS AND RUNNING NORTHERLY BOUNDING WESTERLY ON THE LAST MENTIONED LAND SIXTY-FIVE AND 77/100 (65.77) FEET TO ANGELL STREET AND THE POINT OF BEGINNINGS.

**EXHIBIT B**

Trustee's Deed

**TRUSTEE'S DEED**

KNOW ALL MEN BY THESE PRESENTS, that Joseph M. DiOrio, in his capacity as the duly appointed and qualified Chapter 7 Trustee of the bankruptcy estate of Arnold Kilberg in Case Number 04-10632, and not individually, pending in the United States Bankruptcy Court for the District of Rhode Island, having been duly authorized by an Order issued by the United States Bankruptcy Court for the District of Rhode Island on June 14, 2007 and a Judgment dated June 14, 2007, copies of which are attached hereto as Exhibit A (collectively, the "Order"), to sell certain real estate, described below, free and clear of liens pursuant to 11 U.S.C. §363 and free of the interests of 56 Assoc., LP and 57 Assoc., LP, and by virtue of the power and authority vested in me in my capacity as Trustee, for good and valuable consideration, do hereby grant, bargain, sell, transfer and convey to BROWN UNIVERSITY, Box 1902, Providence, Rhode Island, its successors and assigns forever (the "Buyer"), all right, title and interest in and to the real property described below:

SEE EXHIBIT B ATTACHED HERETO AND MADE A PART HEREOF;

free of the twenty-five percent (25%) tenant-in-common interest of 56 Assoc., LP, and the twenty-five percent (25%) tenant-in-common interest of 57 Assoc., LP.

To have and to hold the described Premises, with the appurtenances, and every part of the same, to the Buyer, its successors and assigns, to its and their

own proper use forever, as fully and absolutely as I as Trustee can and ought to do under the Bankruptcy Code and under the Order.

This conveyance by the Trustee in bankruptcy is such that no withholding is required pursuant to R.I. Gen. Laws §44-30-71.3.

Said Premises are conveyed subject to easements of record, restrictions of record, and taxes assessed as of December 31, 2006.

________________________________
WITNESS

________________________________
Joseph M. DiOrio, in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Arnold Kilberg, and not individually

Date: __________________________

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence on the ___ day of ___________, 2007, before me personally appeared Joseph M. DiOrio, Chapter 7 Trustee of the bankruptcy estate of Arnold Kilberg, to me known and known by me to be the party executing the foregoing instrument and he acknowledged said instrument by him executed to be his free act and deed and his free act and deed in said capacity.

________________________________
NOTARY PUBLIC
Name: ________________________
My Comm. Exp. ________________

# EXHIBIT A

*UNITED STATES BANKRUPTCY COURT*
*FOR THE DISTRICT OF RHODE ISLAND*
*380 Westminster Street, 6th Floor*
*Providence, RI 02903*
*www.rib.uscourts.gov*
*(401)626-3100*

In Re: **Arnold Kilberg**

Debtor(s)

BK No. **1:04-bk-10632**

Chapter **7**

AP No. **1:05-ap-01011**

**Joseph M DiOrio** et al
Plaintiff(s)

v.

**56 Associates, L.P.** et al
Defendant(s)

Judge: **Arthur N. Votolato**

***JUDGMENT ORDER***

Pursuant to the order entered this date, judgment is hereby entered regarding;

**Order Granting Complaint. See order for details**

Judgment #: 1:05–ap–01011 – 128 – 127

Susan M. Thurston
Clerk, US Bankruptcy Court

Dated: **6/14/07**
Document Number: **128 - 127**

By: **HAD**
Deputy Clerk

judgmentap.jsp Form 406

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re: | : | |
| ARNOLD KILBERG<br>Debtor | : | BK No. 04-10632<br>Chapter 7 |
| JOSEPH M. DIORIO, CHAPTER 7 TRUSTEE OF ARNOLD KILBERG<br>Plaintiff | : | |
| v. | : | A.P. No. 05-1011 |
| 56 ASSOCIATES, a Rhode Island Limited Liability Partnership, and 57 ASSOCIATES, a Rhode Island Limited Liability Partnership<br>Defendants | : | |

**ORDER GRANTING TRUSTEE'S REQUEST TO CONDUCT A § 363(h) SALE**

APPEARANCES:

Joseph M. DiOrio, Esq.
Attorney for Plaintiff
LAW OFFICE OF JOSEPH M. DiORIO, INC.
10 Dorrance Street, Suite 1200
Providence, Rhode Island 02903

William J. Delaney, Esq.
Attorney for Defendants
TILLINGHAST LICHT LLP
Ten Weybosset Street
Providence, Rhode Island 02903

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

The Trustee wishes to sell the entire fee simple interest, pursuant to 11 U.S.C. § 363(h), in real estate at 165 Angell Street, Providence, Rhode Island (the Property), in which the Trustee and the Defendants are co-owners. Based upon the evidence and the entire record in this proceeding, and for the reasons argued by the Trustee on May 7, 2007, which we adopt and incorporate herein by reference as our findings of fact and conclusions of law, the relief requested by the Trustee is GRANTED. The Defendants' arguments in opposition are all without merit, they are rejected, and the Trustee is authorized to sell the estate's 50% interest in the property free of the respective 25% interests of 56 Associates, LLP, and 57 Associates, LLP. In addition to the reasons advanced by the Trustee, we add the following in support of this decision:

Section 363(h) authorizes the sale of property in which the estate owns less than a 100% interest, over a co-owner's objection, if certain conditions are met. *See Gray v. Burke (In re Coletta Bros.)*, 172 B.R. 159, 164 (Bankr. D. Mass. 1994):

> (1) that partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) that the sale of the estate's undivided interest in such property would realize significantly less for the

> estate than sale of such property free of the interests of such co-owners;
>
> (3) that the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) that such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

Pursuant to the Joint Pre-Trial Order filed by the parties, elements 1 and 4 have been satisfied. As to the first element, the parties stipulate that: "Partition in kind by subdivision of the Property into separate and distinct lots is impracticable." Joint Pre-Trial Order, Doc. No. 119, p. 2, ¶ j. While this stipulation should end any discussion of item No. (1), the Defendants argue, nevertheless, that partition in kind is practicable because the building can be converted into condominiums. To begin with, the argument contradicts the agreed facts in the Join Pre-Trial Order. However, overindulging the Defendants and addressing their argument on the merits, it still is rejected. The Plaintiff's valuation expert, Peter Scotti, testified convincingly that although conversion to condominium

units is physically *possible*, doing so would not result in the highest and best use of the property, i.e., selling individual condominium units over time would produce significantly fewer net dollars than by marketing the property as it currently exists - as a single parcel, best suited for mixed use. Scotti also stated that his calculations do not even include the costs required to do a condominium conversion, and with that dollar item added into the equation the net profit from the sale of individual condominium units makes even less economic sense. There is no competent evidence to contradict Scotti's conclusions. Given the significant negative impact that condominium conversion would have on the value of the property, I find that route is not a reasonable alternative, and the first element of Section 363(h) is resolved in favor of the Trustee.

The Trustee has clearly met his burden regarding the second element - i.e., that the sale of only the Trustee's one-half interest would yield significantly less for the estate than a sale of the whole property. The Defendants argue that there is no evidence in the record regarding the value of the estate's one-half interest. I disagree. On that issue, we have the best evidence possible - Brown University, the most logical and the *only* known interested party, on September 9, 2006, offered the Trustee $650,000 for the estate's one-half interest, but after conducting

its due diligence, decided not to purchase the Trustee's fractional interest. Based on the Brown University experience, together with the absence of any other offers for a fractional share, I find that the value of the estate's one-half interest in this property is less than $650,000. Couple this with the fact that the Defendants' own expert testified that the value of the entire property exceeds $2.2 million, and the math is quite revealing. The uncontradicted evidence is that the estate could receive as much as $450,000 more for its interest by selling the whole, so the Trustee easily satisfies this element. Although Mr. Paolino persistently objects to the Trustee's recommendation, it should not be forgotten that any financial benefit resulting from a § 363 sale will inure equally to his benefit.

The third element involves a balancing of harm test, i.e., the benefit to the movant of selling the whole must outweigh the harm, if any, to the co-owner. Again, I find that the Trustee has easily met his burden. The harm alleged by the Defendants is that a sale of their interest will result in substantial capital gains, which will trigger a large tax liability. Joseph Paolino, Sr., the principal of the Defendant LLPs, and a virtual icon in the Providence real estate market who makes his living buying, selling, renting, developing, etc., acknowledged that selling real estate for profit is a good thing. He is also familiar with so-called IRS

Code "1031 exchanges" which allow investors to buy and sell property without incurring capital gain tax liability. In fact, his limited liability partnerships (the Defendants) actually purchased their present interest in the subject property through just such a tax deferred exchange. Because Mr. Paolino, for reasons of nostalgia or whatever, chooses not to avail himself of the benefits of Section 1031 of the Internal Revenue Code, does not equate to *harm* under Section 363(h). Based upon the entire record in this lengthy and contentious dispute, I find that the benefit of a sale of the entire Angel Street property as a single entity will outweigh the harm, if any, to the co-owners.

Finally, as to the fourth element, the parties stipulated in the Joint Pre-Trial Order that: "The Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light or power." Joint Pre-Trial Order, Doc. No. 119, p. 2, ¶ I.

Accordingly, in light of the foregoing discussion, the Trustee is authorized to sell 165 Angell Street free of the interests of the Defendant co-owners.

As an accommodation to them I will assume that the Defendants have filed a Motion for Stay Pending Appeal, and DENY the same on the ground that the Defendants have not established a basis for obtaining a Temporary Restraining Order. *In re Public Service Co.*,

116 B.R. 347, 348 (Bankr. D.N.H. 1990). This will save the Defendants time (which equals legal fees), and at least one step in the appeal process. If they decide to take that route, they may request such relief from the District Court.

Enter judgment consistent with this Order.

Dated at Providence, Rhode Island, this 14th day of June, 2007.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 6/14/2007

# EXHIBIT B

(Legal Description)

PARCEL I: THAT LOT OF LAND, WITH ALL BUILDINGS AND IMPROVEMENTS THEREON, SITUATED IN THE CITY OF PROVIDENCE IN THE STATE OF RHODE ISLAND, ON ANGELL STREET A SHORT DISTANCE WESTERLY FROM THAYER STREET, BOUNDING NORTHERLY ON SAID ANGELL STREET, EASTERLY ON LAND NOW OR LATELY OF HENRY F. MCCUSKER AND WIFE, SOUTHERLY ON FONES ALLEY, AND WESTERLY ON LAND NOW OR LATELY OF CHURCHILL HOUSE CORPORATION. SAID LOT MEASURES FORTY (40) FEET ON ANGELL STREET AND HOLDING THAT WIDTH EXTENDS BACK THEREFROM ABOUT ONE HUNDRED SIXTEEN (116) FEET.

SAID LOT CORRESPONDS TO OR SUBSTANTIALLY TO LOT NO. 38 (THIRTY-EIGHT) ON THAT PLAT ENTITLED, "A PLAN OF PART OF THE ESTATES OWNED BY THE HEIRS OF NATHAN & RUFUS WATERMAN SURVEYED & PLATTED BY S. BARRETT CUSHING 1833", RECORDED IN THE OFFICE OF THE RECORDED OF DEEDS IN SAID CITY OF PROVIDENCE IN PLAT BOOK 1 AT PAGE 4 AND (COPY) ON PLAT CARD NO. 2.

THIS CONVEYANCE IS MADE SUBJECT TO A TUNNEL EASEMENT GRANTED BY JOSEPH M. BENNETT TO THE RHODE ISLAND COMPANY BY DEED DATED OCTOBER 9, 1914 AND RECORDED IN SAID RECORDS IN BOOK 543 AT PAGE 436.

PARCEL II: THAT STRIP OF LAND, SITUATED ON THE SOUTHERLY SIDE OF ANGELL STREET IN THE CITY OF PROVIDENCE IN THE STATE OF RHODE ISLAND, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT IN THE SOUTHERLY LINE OF ANGELL STREET AT THE NORTHWESTERLY CORNER OF LOT NO. 39 (THIRTY-NINE) ON THAT PLAT ENTITLED "PLOT OF PART OF AN ESTATE OWNED BY THE HEIRS OF NATHAN AND RUFUS WATERMAN SURVEYED AND PLOTTED MARCH 16, 1849", RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS IN SAID CITY OF PROVIDENCE IN PLAT BOOK 3 AT PAGE 32 AND (COPY) ON PLAT CARD NO. 82 AND AT THE NORTHEASTERLY CORNER OF LAND NOW OR LATELY OF CHESTNUT RIDGE CORP., SAID POINT BEING ABOUT ONE HUNDRED TEN (110) FEET WESTERLY OF THE WESTERLY LINE OF THAYER STREET; THENCE EASTERLY BOUNDING NORTHERLY ON ANGELL STREET TWO AND 06/100 (2.06) FEET TO A CORNER; THENCE TURNING AN INTERIOR ANGEL OF 89° 10' AND RUNNING SOUTHERLY SIXTY-FIVE AND 78/100 (65.78) FEET TO A CORNER; THENCE TURNING AN INTERIOR ANGEL OF 90° 50" AND RUNNING WESTERLY ONE AND 10/100 (1.10) FEET TO SAID LAND NOW OR LATELY OF CHESTNUT RIDGE CORP.; THENCE TURNING AT RIGHT ANGELS AND RUNNING NORTHERLY BOUNDING WESTERLY ON THE LAST MENTIONED LAND SIXTY-FIVE AND 77/100 (65.77) FEET TO ANGELL STREET AND THE POINT OF BEGINNINGS.