**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**56 ASSOC. and 57 ASSOC.**
**Appellants**

**vs.**

**JOSEPH M. DIORIO, CHAPTER 7 TRUSTEE OF ARNOLD KILBERG**
**Appellee**

**C.A. 1:07-CV-00222-L**

**ON APPEAL** from the United States Bankruptcy Court for the District of Rhode Island

# BRIEF OF APPELLEE

Joseph M. DiOrio (#2616)
Gardner H. Palmer, Jr. (#3707)
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, RI 02903
401 632-0911
401 632-0751 Fax
jmdiorio@dioriolaw.com
ghpalmer@dioriolaw.com

## TABLE OF CONTENTS


**I. Statement of the Issues and Standard of Review** ............ 1

**II. Statement of the Case** ............ 1

A. Nature of the Case, Course of Proceedings and Disposition Below ............ 1

B. Statement of Facts ............ 1

**III. Argument of Appellee** ............ 4

A. The Bankruptcy Court did not commit clear error in granting Appellee the authority to sell all of the co-owner Appellants' interests in the Property under 11 U.S.C. §363(h) because the record evidence demonstrates that Appellee met his burden on each of the §363(h) elements ............ 4

B. The Bankruptcy Court correctly found that partition in kind is impracticable ............ 5

C. The Bankruptcy Court correctly found that sale of the Estate's interest in the Property would realize significantly less for the Estate than a sale of the Property free of the co-owner's interests ............ 6

D. The Bankruptcy Court correctly found that sale of the Property free of the interests of Appellants would result in a benefit to the Estate that outweighs any detriment to Appellants ............ 10

E. Appellants improperly introduced a §363(e) adequate protection concept into the §363(h) determination ............ 14

F. The §363(h) construct takes into account the balance of the equities ............ 15

**IV. Conclusion** ............ 16


## APPENDIX


Complaint ............ A-01
Answer ............ A-07
Joint Pretrial Order dated April 23, 2007 ............ A-21
Exhibit A ............ A-26
Exhibit C ............ A-29
Exhibit D ............ A-47
Judge Votolato's Judgment and Order Granting Trustee's Request to Conduct a §363(h) Sale dated June 16, 2007 ............ A-49
Notice of Appeal ............ A-57

Transcript of Proceedings before Judge Votolato, United States Bankruptcy Judge for the District of Rhode Island, Adv. Pro No. 05-01011, April 24, 2007 .......... A-60
Transcript of Proceedings before Judge Votolato, United States Bankruptcy Judge for the District of Rhode Island, Adv. Pro. No. 05-01011, April 25, 2007.......... A-85
Transcript of Proceedings before Judge Votolato, United States Bankruptcy Judge for the District of Rhode Island, Adv. Pro No. 05-01011, April 27, 2007 .......... A-89
Transcript of Proceedings before Judge Votolato, United States Bankruptcy Judge for the District of Rhode Island, Adv. Pro. No.05-01011, May 3, 2007 ............ A-103

## TABLE OF AUTHORITIES

### CASES

*Goldberg v. South East Partners Corp. (In re Sturman)*, 222 B.R. 694 (Bankr. D.N.Y. 1998)12

*Gray v. Burke (In re Coletta Bros.),* 172 B.R. 159 (Bankr. D. Mass. 1994).................. 11

*In re Calumet Farms, Inc.*, 150 B.R. 664 (Bankr. E.D. Ky. 1992)............................... 7

*In re Griffin*, 123 B.R. 933 (Bankr. D. Fla. 1991) ....................................................... 10

*In re Slater Health Center Inc.,* 306 B.R. 20, 23 (D.R.I. 2004) ................................... 5

*In re Vassilowitch*, 72 B.R. 803 (Bankr. D. Mass. 1987)............................................. 10

*McConnell et al. v. Wilson*, 543 A.2d 249 (R.I.1988) ................................................. 6

*Palmacci v. Umpeirrez,* 121 F.3d 781, 785 (1st Cir. 1997) .......................................... 5

*Peterson v. Lewis (In re Jenkins),* 347 B.R. 77 (Bankr. D. Ill. 2006)............................ 11

*Town of Westerly v. Waldo*, 524 A.2d 1117 (R.I. 1987) ............................................... 6

### FEDERAL STATUTES, RULES AND REPORTS

11 U.S.C. §363(e) ........................................................................................... 14,15
11 U.S.C. §363(h) ........................................................................................... passim
11 U.S.C. §363 (i) ........................................................................................... 15
S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978)...................... 15

### BOOKS, PAMPHLETS, TREATISES

Collier on Bankruptcy, §363.08(5) (15th ed. rev. 1998)................................................ 10
Collier on Bankruptcy, §363.08(6)(b) (15th ed. rev. 1998) .......................................... 14
Collier on Bankruptcy, §363.08 (6)(c) (15th ed. rev. 1998).......................................... 10

### PROCEDURES

Fed. R. Bank. P. 8013 ....................................................................................... 5

## I. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

Whether the Bankruptcy Court committed clear error in granting Appellee the authority to sell all of the co-owner Appellants' interests in certain real property under 11 U.S.C. §363(h).

a. Whether partition of the property in kind is impracticable.

b. Whether the sale of Appellee's undivided one-half co-ownership interest in the property would realize significantly less for the bankruptcy estate than a sale of the property free of Appellants' interests in the property.

c. Whether the benefit to the bankruptcy estate of a sale of the property free of Appellants' interests outweighs the detriment, if any, to Appellants.

The standard of review applied to the factual findings of a Bankruptcy Court is clear error. Legal conclusions of a Bankruptcy Court are reviewed *de novo.*

## II. STATEMENT OF THE CASE

### A. Nature of the Case, Course of Proceedings and Disposition Below

The proceeding below was a trial in the United States Bankruptcy Court for the District of Rhode Island before the Honorable Arthur N. Votolato of an adversary proceeding brought by Appellee, Joseph M. DiOrio, the Chapter 7 Trustee of Arnold Kilberg, against Appellants, 56 Assoc. and 57 Assoc. Appellants and Appellee are the co-owners of property located at 165 Angell Street, Providence, Rhode Island (the "Property"). Appellee filed a complaint on February 29, 2005 against Appellants seeking to sell Appellee's and Appellants' interests in the Property under 11 U.S.C. §363(h). The trial resulted in a June 14, 2007 Order Granting Trustee's Request to Conduct a §363(h) Sale pursuant to which the Bankruptcy Court authorized Appellee to sell Appellee's and Appellants' interests in the Property.

### B. Statement of Facts

The following facts were stipulated in a Joint Pretrial Order or are otherwise not in dispute. Appellant is the duly appointed Chapter 7 Trustee of Arnold Kilberg pursuant to the

Order of the Bankruptcy Court entered in Case No. 04-10632-ANV. *App. 21.* The Estate of Arnold Kilberg (the "Estate") owns an undivided one-half interest in the Property as a tenant in common. *App. 22.* Appellee holds all right, title, and interest in the one-half interest in the Property on behalf of the Estate. *App. 22.* Appellants 56 Assoc. and 57 Assoc. each own an undivided one-quarter interest as tenants in common in the Property. *App. 22.*

The Property is a mixed use building on Angell Street in the heart of the East Side of Providence. It contains approximately 8,100 square feet of improved space on a 4,756 square foot rectangular lot located about two lots west of Thayer Street. *App. 79-80.* The building consists of a basement unit containing (a) a commercial property, the Liquid Lounge, (b) a first floor Asian restaurant, Phonatics, and (c) eight residential efficiency apartments on two upper floors. *App. 79-80.* Partition in kind by subdivision of the Property into separate and distinct lots is impracticable. *App. 22.*

The Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light, or power. *App. 22.*

After trial, the Bankruptcy Court found the following facts. Conversion of the Property into condominiums is not a reasonable alternative. *App. 53.* If the Property's ten units were converted into condominiums, Appellee becomes a one-half owner of ten properties with Appellants, instead of the one-half owner of one property. Accordingly, converting the Property into condominiums does not result in a partition in kind.[1] *App. 84, 104-05.*

The Bankruptcy Court found as a fact that the value of the Estate's one-half interest in the Property if sold alone is less than $650,000. *App. 54.* The Bankruptcy Court's finding is supported by the following record evidence. In October 2006, Brown University offered

[1] The Bankruptcy Court incorporated by reference the reasons articulated by Appellee in his closing argument as the Court's findings of fact and conclusions of law. *App. 51.*

$650,000 for the Estate's one-half interest in the Property subject to due diligence and other conditions. *App. 30, 64-67.* In November 2006, Brown withdrew its offer, but expressed its interest in purchasing the Property as an entirety, and stated that it "would expect to pay the Trustee…somewhat more for each 50% interest than the price previously offered to the Trustee because it would be purchasing a whole property rather than a half-interest…. *App. 47-48*. Brown's withdrawn offer was the only offer made for the Estate's one-half interest in more than a year of marketing the Estate's interest, through William Greene of Hayes & Sherry Real Estate Services, to all of the likely East Side property purchasers. *App. 61-65.*

The Bankruptcy Court also found that the Estate would receive significantly less from a sale of just the Estate's one-half interest in the Property than the Estate would receive from a sale of the whole property. *App. 53.* The Bankruptcy Court reached this conclusion based on Appellants' evidence that the Property could be worth as much as $2.2 million or more if sold as a whole, potentially resulting in over $450,000 more to the Estate than a sale of just the Estate's one-half interest. *App. 53-54.* Expert testimony at trial valued the Property if sold as an entirety at between $1,850,000 (Appellee's expert) and $2,275,000 (Appellants' expert). *App. 81, 90.*

Appellee's expert witnesses testified to a reasonable degree of certainty that a sale of the entirety would yield the Estate substantially more than the sale of the Estate's one-half interest. *App. 68-69, 82*. Even Appellants' expert reluctantly conceded that the value of a fractional interest can be adversely affected by a minority discount relative to the value of a property sold in its entirety. *App. 91-92.*

The Bankruptcy Court found that Appellee met his burden of showing that the benefit to the Estate of selling the Property as a whole outweighs any harm to the Appellants. *App. 54.* Appellants stipulated that they do not need the income generated by the property in order to meet

Appellants' principals' living expenses. *App. 100.* Incurring capital gains tax from selling real estate at a profit is not a harm that outweighs the benefit to the Estate and, in any event, Appellants acknowledged that they love to pay capital gains tax because it means they are making money. *App. 54, 100-01.* Further, to the extent that capital gains tax could be construed as a harm, Appellants can eliminate the harm through an IRS §1031 property exchange. *App. 54-55.* Appellants acquired their interests in the Property through just such an exchange and have frequently used this procedure to defer capital gains tax. *App. 102*. Nostalgia or the desire to hold onto property for unspecified reasons is not harm under §363(h). *App. 55.*

## III. ARGUMENT OF APPELLEE

### A. The Bankruptcy Court did not commit clear error in granting Appellee the authority to sell all of the co-owner Appellants' interests in the Property under 11 U.S.C. §363(h) because the record evidence demonstrates that Appellee met his burden on each of the §363(h) elements.

Section 363(h) of the United States Bankruptcy Code establishes a mechanism for a trustee who co-owns property with non-debtors to sell the property interest of the estate and the co-owners if the trustee satisfies four conditions:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. *11 U.S.C. §363(h)*.

The Bankruptcy Court found that Appellee met his burden on each of the above four elements. Factual findings of a Bankruptcy Court are not set aside unless "clearly erroneous." *Fed. R. Bank. P. 8013*. Factual findings are clearly erroneous only if the District Court "has a definite and firm conviction that a mistake has been committed." *In re Slater Health Center, Inc.*, 306 B.R. 20, 23 (D.R.I. 2004) (internal quotations omitted). Legal conclusions of a Bankruptcy Court are reviewed *de novo* by the District Court, but the District Court is free to affirm the Bankruptcy Court's decision on "any grounds supported by the record." *Id.*; *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir. 1997). Based on the applicable standard of review and the Bankruptcy Court's well-founded findings of fact and conclusions of law, this Court should affirm the Bankruptcy Court's decision granting Appellee the authority to sell the Estate's and Appellants' interests in the Property.

**B. The Bankruptcy Court correctly found that partition in kind is impracticable.**

The Bankruptcy Court concluded that partition in kind is impracticable. In this case, the nature of the Property - a single, multi-tenanted, multi-use building - makes it impracticable to partition. The Property consists of a single 8,100 square foot building on a 4,756 square foot parcel of land. It contains commercial tenants on the basement and first floor levels, and has eight small residential units on its two upper levels. Its configuration does not lend itself to physical partition in any practical way. The parties stipulated that partition in kind by subdivision of the Property into separate and distinct lots is impracticable. *App. 22*. Undisputed trial testimony also supports the lower court's finding. *App. 83*.

Despite acknowledging that the Property cannot be partitioned in kind by subdivision, Appellants find fault with the lower court's determination that partition in kind is impracticable because, Appellants say, "the Property could be legally condominiumized." *Appellants' Brief at 5.* Appellants' argument misses the mark because, whether or not the Property can be legally condominiumized, changing the form of ownership does not result in a partition in kind. Condominiumizing a property results only in a change in the form of ownership, not in a subdivision or partition of the property. *See McConnell et al. v. Wilson*, 543 A.2d 249, 250 (R.I. 1988) (conversion of a lot into a condominium is a mere change in the form of its ownership and not a subdivision of land); *see also Town of Westerly v. Waldo,* 524 A.2d 1117, 1120 (R.I. 1987) (conversion of a hotel into condominium units was only a change in form of ownership, not a change in use).

Simply stated, the Property is currently owned 50% by Appellee and 25% by each Appellant. If the Property were converted into condominiums, the same three parties would own *ten separate units* of the Property, not one, *in the exact same percentages* as the Property is currently owned. The Property would not be partitioned in kind. If anything, condominiumizing the Property would compound the Trustee's problem tenfold.

**C. The Bankruptcy Court correctly found that sale of the Estate's interest in the Property would realize significantly less for the Estate than a sale of the Property free of the co-owners' interests.**

The record demonstrates that, despite diligent marketing efforts, Appellee did not obtain a viable offer for the Estate's 50% interest in the Property. The only offer for the Estate's one-half interest in the Property, a $650,000 offer from Brown, was withdrawn. In withdrawing its offer, Brown acknowledged that its offer for the Estate's 50% interest would increase if Brown could acquire a 100% interest. Appellee presented evidence at trial of an offer from Brown of

$1,300,000 for the entire Property, conditioned on a sale free and clear of the interests of Defendants.[2] *App. 26-28.* Based on this evidence alone, the lower court would have been justified in finding that the benefit to the Estate from a sale of its interest alone was worth significantly less than a sale free of Appellants' interests.

However, additional evidence supports the trial court's finding. Based on Appellee's marketing efforts and Brown's withdrawn $650,000 offer for the Estate's one-half interest, the Bankruptcy Court found that the value of the Estate's interest was less than $650,000. This finding was not clearly erroneous. As Appellants acknowledge in their brief, evidence at trial indicated that the Property's value if sold as an entirety could reach $2,200,000. *Appellants' Brief at 6*. At that value, the benefit to the Estate would be $1,100,000 against a benefit of under $650,000 if the Estate's interest was sold alone. Thus, the relative benefit to the Estate would be more than $450,000. On the low end, the evidence suggested that the Property was worth $1,850,000 if sold as an entirety. *App. 81.* At that value, the benefit to the Estate would be $925,000 against a benefit of under $650,000 if the Estate's interest was sold alone. Under that scenario, the relative benefit to the Estate would be more than $275,000. In either case, the significant benefit to the Estate is undeniable.

Perhaps because the benefit to the Estate is undeniable, Appellants complain that the trial court erred by failing to "place a specific value of the Property." *Appellants' Brief at 6.* Yet, neither §363(h) nor the case Appellants cite, *In re Calumet Farms, Inc.*, 150 B.R. 664 (Bankr. E.D. Ky. 1992), requires such a specific finding.

By its terms, §363(h) requires only a finding that an estate would realize significantly less selling its interest alone than together with the co-owners' interests. The statutory construct calls

[2] Although not part of the record before the Bankruptcy Court, Appellee has, since trial, negotiated a purchase and sale agreement with Brown for Appellee's and Appellants' interests in the Property in the amount of $1,700,000. Appellee has requested approval of the Court to conduct competitive bidding with $1,700,000 as the starting point.

for a relative calculus, not an absolute one. The standard does not compel the trial court to make separate specific findings as to the actual sale prices a property might fetch if the interests were sold alone and together. As in this case, it is fully consistent with the statute to make relative findings based on a range of values in evidence as to what the relative interests in the property at issue might be worth.

In fact, such a requirement of specificity could make an ultimate sale of an estate's interest more difficult. Prospective bidders might be scared off from bidding if a court has previously determined that a property is worth a fixed amount that is higher than the bidder is prepared to pay. A trustee might also be hampered in his ability to sell the property if it turns out that the market for the property was less robust than the trial court determined because a trial court might be reluctant to allow a sale of the property for less than the court's prior finding of value. The Bankruptcy Court's decision allows the Appellee to test the marketplace with competitive bidding and, ultimately, the Court will approve or deny his request to sell the Property under §363(h), which is designed to allow competition to benefit an estate. At that point, the real value of the property will be determined by the marketplace.

*In re Calumet* similarly does not stand for the proposition that a bankruptcy court *must* find a specific value of the property at issue. In fact, *Calumet* addressed the third prong of the 363(h) test - the issue of whether the benefit to the estate outweighed the detriment to the co-owners. *Id.* at 669 ("Thus the factual issue on which this matter hinges is whether the benefit to the estate of the sale of the stallion free of the interests of co-owners *outweighs the detriment* to the defendant co-owners") (emphasis added). Even then, the *Calumet* court did not make a specific finding of value. Rather, the court found only the ***minimum*** sale price at which the benefit to the estate would outweigh the detriment to the co-owners by a dollar. *Id.* at 674-75.

The second prong – whether sale of the estate's interest alone would net significantly less for the state - was not at issue before the appellate court. As in this case, both the trial and appellate *Calumet* courts based their conclusions that the benefit to the estate from a sale of the estate's interest alone was significantly less than a sale with the co-owners' interests on a range of values supplied by the parties. *Id.* at 668-69 (recounting valuation evidence). With respect to the lower court's finding on the second prong of §363(h), the appellate court stated:

> "Ultimately, the [trial] court was more persuaded by the testimony of [plaintiff's experts] that selling only the estate's interest in the horse, in other words selling only Calumet's shares, would net significantly less for the estate than would the sale of the entire horse. Accordingly, the court ruled from the bench that the plaintiff debtor in possession had met the burden of proving that sale of only the estate's interest in the stallion would realize significantly less for the estate than sale of the stallion free of the interests of the defendant co-owners. *Id.* at 669.

The only reference of substance to the second prong by the appellate court is the following quote, in which the court also made no specific findings of value and, in fact, did nothing more than recognize the conflicting evidence on the point before stating the court's belief that the estate had met its burden:

> There is conflicting evidence on the question of whether concurrent sale of the estate's interest and the interests of the defendant co-owners in the stallion will benefit the estate more than merely a sale of Calumet's shares representing a one-half interest in the stallion. However, the court was and is convinced that sale of the stallion free of the interests of the co-owners will benefit the estate substantially. *Id.* at 674.

In short, as will be further discussed below, *Calumet* provides just one approach to assessing the third §363(h) prong - whether the benefit to the estate outweighs the detriment to the co-owners. If the *Calumet* decision sheds any light at all on how to apply the second §363(h) prong, it highlights that Judge Votolato did not err in his decision.

Finally and further belying Appellants' position is the fact that courts often "take judicial notice, under Fed. R. Evid. 201, that a sale of the debtor's undivided interest would generate less for the estate than a sale of the entire property." *Collier on Bankruptcy*, ¶363.08[5] [15th ed. rev.) (*"Collier")*; *see, e.g., In re Vassilowitch*, 72 B.R. 803, 808 (Bankr. D. Mass. 1987) ("the Court takes judicial notice of the fact that the estate's undivided interest would realize significantly less for the estate than a sale free of Mrs. Vassilowitch's interest"); *see also In re Griffin*, 123 B.R. 933, 935 (Bankr. D. Fla. 1991) ("This Court takes judicial notice that a sale of the estate's undivided one-half interest would realize substantially less than a sale of the property free of the interest of the co-owner. The co-owner's undivided one-half ownership interest chills any prospective purchase of the estate's interest."). If Appellants' position were in fact the law, courts could not take judicial notice because they would have to make specific value findings.

**D. The Bankruptcy Court correctly found that sale of the Property free of the interests of Appellants would result in a benefit to the Estate that outweighs any detriment to Appellants.**

Courts evaluating a trustee's burden under §363(h) hold that, while the trustee ultimately bears the burden of establishing all the conditions of §363(h), his initial burden is to merely establish that the sale would result in a benefit to the estate. *Collier* §363.08[6][c]. Once the trustee has made this showing, the co-owners must show they would suffer a detriment, which then triggers the trustee's obligation to establish that the benefits outweigh the detriments. *Id.*

> The Trustee must also show that the benefit to the estate of a sale of the property free of the interests of the Defendant outweighs the detriment, if any, to the Defendant. 11 U.S.C. § 363(h)(3). Although the Plaintiff bears the ultimate burden of proof on this issue, the Plaintiff's initial burden is only to show that sale of the property free of the Defendant's interest would produce a benefit to the estate: that the estate's share of the net proceeds would exceed existing liens on the Debtor's interest in the property. If the Defendant then shows that such a sale would produce a detriment to him, the Trustee must show that the benefit to the estate is greater than the detriment to the Defendant.

*Gray v. Burke (In re Coletta Bros.)*, 172 B.R. 159, 165 (Bankr. D. Mass. 1994); *see also Peterson v. Lewis (In re Jenkins)*, 347 B.R. 77, 86 (Bankr. D. Ill. 2006) ("[The trustee's] initial burden, however, is simply to show that a sale free of the interests of the debtor's co-owners will produce a benefit to the estate. Once that burden is met, the defendants must come forward with evidence of detriment.").

There is no minimum amount by which the estate's benefit must outweigh the co-owners' detriment. As the *Calumet* court stated:

> Once it is established that the benefit to the estate of a sale is significant and further that the benefit to the estate "outweighs" the detriment to the co-owners, there is no further requirement that the benefit to the estate must exceed the detriment to the co-owners significantly as well. Congress could have mandated that the benefit to the estate must exceed the detriment to co-owners by a significant amount but chose instead to require only that the benefit to the estate must "outweigh" the detriment in order to tip the scales in favor of a sale. Under the language of the Code a sale that results in a considerable or substantial detriment to co-owners is permissible so long as the benefit to the estate outweighs that detriment. *Calumet*, 150 B.R. at 675.

In *Calumet*, a commercial case like this one, the court found that as long as the benefit to the estate exceeded the detriment to the co-owners by as little as one dollar, the trustee had met his burden. *Id.* at 674-75. With the above law as a backdrop, we turn to this case.

As set forth above, at trial the evidence showed and the Bankruptcy Court found that a sale of the Property free of the interests of Appellants will create a significant benefit to the Estate. Based on the evidence, that benefit may range from more than $275,000 to over $450,000. By contrast, Appellants offered scant, if any, evidence of detriment. The lower court properly found that the Estate's benefit outweighs any detriment to Appellants.

At trial, Appellants first sought to establish detriment by suggesting that Appellants might have to pay capital gains tax and that Appellants' principals needed the income from the Property to live. Appellants later disclaimed both contentions. As to the capital gains tax issue, Appellants' principal testified that paying them was an ordinary incident of selling property at a profit and that he loved to pay capital gains tax because it meant he was earning a profit on the sale of his real estate.[3] *App. 54, 100-01.* As to the argument that the Property was needed for support, Appellants stipulated at trial that they do not need the income generated by the property in order to meet Appellants' principals' living expenses. *App. 100.* Thus, neither capital gains tax nor loss of the income stream constitutes a detriment to the co-owners.

Appellants' principal also wistfully testified about buying the Property many years ago for the long term and his reluctance to part with the Property today. *App. 93-99.* The Bankruptcy Court correctly concluded that nostalgia or the desire to hold onto property for unspecified reasons does not constitute harm under §363(h), at least in the commercial setting. *App. 55.* *Compare Calumet*, 150 B.R. at 675 (in rejecting a co-owner's professed affection for the stallion in a commercial case, court was persuaded that co-owners were "more interested in the stallion as a money maker than as a companion") *with Goldberg v. South East Partners Corp. (In re Sturman)*, 222 B.R. 694, 708 (Bankr. D.N.Y. 1998) (in husband and wife situations, "most courts have understandably been sympathetic to the co-owner's claim and have been reluctant to

[3] Further, to the extent that capital gains tax could be construed as a harm, substantial testimony at trial demonstrated how Appellants can eliminate the harm through an IRS §1031 property exchange. *App. 54-55, 70-78.* The parties' §1031 experts disagreed on the success with which a §1031 exchange could be accomplished without Appellants' cooperation. However, even Appellants' expert ultimately agreed that, if Appellants' failure to cooperate caused the Trustee to have to sign the deed under court order, there would be a "strong likelihood that you could effectuate a 1031 exchange." *App. 86-88.* Thus, if Appellants choose not to use this common procedure to defer capital gains tax, they have nobody but themselves to blame if they incur a tax.

deprive the non-debtor spouse of a roof over his or her head -- even if he or she will receive cash for the interest in the house").

Thus, Appellants offered no meaningful evidence of non-economic harm and Appellants' brief recites none. In their brief, the closest Appellants come to contending that they will suffer detriment from a sale is that the Property is appreciating in value because "[t]hey ain't making any more of this stuff" and there is allegedly only one end-user. *Appellants' Brief at 9*. Nowhere do they explain how this detriment, if in fact it is a detriment, is greater than the Estate's benefit.

Accordingly, Appellants failed to establish any cognizable detriment, let alone detriment that outweighs the substantial benefit to the Estate. Without evidence of detriment in the record, the calculation of whether the Estate's $275,000 to $450,000 benefit outweighs the detriment to Appellants was an easy one for the Bankruptcy Court to make. This absence of detriment is fatal to Appellants' claim of error.

Nevertheless, Appellants persist that the Bankruptcy Court was required to make a finding of the value of the Property in order to determine that the benefit to the Estate outweighs the detriment to the co-owners. *Appellants' Brief at 8*. Appellants again misconstrue *Calumet* in arguing that the Bankruptcy Court's alleged failure to determine the value of the Property as an entirety prevented the lower court from making a determination on benefit versus detriment. As recounted above, the *Calumet* court did not make a specific finding on the value of the stallion as an entirety. Instead, the court used evidence offered by the co-owners as to the loss of income they would sustain to arrive at a *minimum* sale price at which the benefit to the estate would outweigh the detriment to the co-owners by one dollar. A sale at that price, the court concluded, would fulfill the trustee's obligation on the detriment issue. *Calumet,* 150 B.R. at 674.

Here, Appellants did not offer any evidence of the loss of income to them if the Property is sold. In fact, the only evidence on that point was that the income from the Property was not needed to live on.

In any event, the *Calumet* method is only one way to approach the benefit versus detriment calculation. It focuses solely on an economic analysis. However, the cases are clear that other forms of detriment besides financial harm can be weighed in the assessment. *Goldberg*, 222 B.R. at 708-09 (Bankr. D.N.Y. 1998); *see also Collier* ¶363.08[6][b]. Thus, the precise mathematical analysis employed in *Calumet* may be acceptable, but it is certainly not the only way to conclude that an estate's benefit outweighs the co-owners' detriment. And here, the Bankruptcy Court certainly did *not* commit error even if Appellants were correct that the *Calumet* court specifically found the value of the property rather than the minimum price at which the property needed to be sold in order for the benefit to outweigh the detriment.

**E. Appellants improperly introduce a §363(e) adequate protection concept into the §363(h) determination.**

Without explanation or citation as to applicability to §363(h) proceedings, Appellants assert that the Bankruptcy Court's decision deprives Appellants of their right to adequate protection under 11 U.S.C. §363(e). In fact, as Appellants concede, §363(e) traditionally applies to debtor/creditor relationships, not sales of co-owners' property interests. That section seeks to insure that creditors with an interest in the debtor's property are protected when the property is used, sold or leased.[4] Further, as the Senate Judiciary Report notes: "Subsection (e) also provides that where a sale of the property is proposed, an entity that has an interest in such property may bid at the sale thereof and set off against the purchase price up to the amount of

[4] The interest in the debtor's property that §363(e) seeks to protect for creditors is distinct from a co-owner's interest in property in which the debtor shares an undivided interest. As applied to a tenancy in common, §363(e) would seek to protect only the creditor's interest in the *debtor's* property interest, not the co-owner's property interest.

such entity's claim." *(S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) pp. 55, 56, 60, as set forth in the History to 11 U.S.C. §363(e))*. This is similar to the protection 363(h) provides to a co-owner through 363(i).

To protect co-owners in sales under §363(h) like this case, Congress enacted §363(i). That section provides:

> Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated. *11 U.S.C. §363(i).*

Congress, in its wisdom and discretion, has concluded that offering co-owners the ability to purchase the property at the price at which the highest bidder is willing to pay adequately protects co-owners. If the affected co-owner believes the price at which the sale is to be consummated is higher than the co-owner wishes or is able to pay, the co-owner can allow the property to be sold and reap the financial benefit of the sale. If the affected co-owner believes the price at which the sale is to be consummated is too low, the co-owner can buy the property (with the advantage that the co-owner only needs to come up with a portion of the money). Either way, the co-owner is adequately protected.

**F. The §363(h) construct takes into account the balance of the equities.**

Again without explanation or citation, Appellants find fault with the Bankruptcy Court for allegedly failing to take into account a balancing of the equities in authorizing Appellee to sell Appellee's and Appellants' interests in the Property as an entirety. However, the statutory scheme created by §363(h) is itself a balancing of the equities.

The court can only order a sale if the trustee meets each of the four statutory conditions. One such requirement is that it is impracticable to partition the property. That condition reflects Congress's preference to leave property interests intact if practicable. Also, the court cannot order a sale unless the resulting benefit to the estate is significant. This also serves to protect co-owners. Finally, the express requirement that the court determine that the benefit to the estate outweighs the detriment to the co-owners, perforce, results in a balancing of the equities. Congress has determined that, as long as the estate's benefit outweighs the co-owners' detriment by any amount, the equities have been balanced.

## IV. CONCLUSION

In summary, the Bankruptcy Court correctly found that (1) partition in kind is impracticable, (2) the Estate would realize significantly less from a sale of the Estate's undivided one-half interest in the Property than it would if the Property was sold free of Appellants' interests, (3) the benefit to the Estate outweighs the detriment, if any, to of Appellants, and (4) the Property was not used as a utility. Accordingly, Appellee respectfully asks the Court to affirm the decision of the Bankruptcy Court authorizing Appellee to sell the Property free of the interests of Appellants pursuant to 11 U.S.C. § 363(h).

Respectfully submitted:
Joseph M. DiOrio,
Trustee of Arnold Kilberg
By his Attorneys,

/s/ Gardner H. Palmer, Jr.
Joseph M. DiOrio (#2616)
Gardner H. Palmer, Jr. (#3707)
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, Rhode Island 02903
401 632-0911 / Fax: 401 632-0751
jmdiorio@dioriolaw.com
ghpalmer@dioriolaw.com

Date: November 19, 2007

## CERTIFICATION

I hereby certify that I electronically served a copy of the within Brief of Appellee on the following counsel and/or parties using the CM/ECF system on the 19th day of November, 2007.

William J. Delaney, Esq.
Reavis Cianciolo LLC
55 Dorrance Street, Suite 200
Providence, RI 02903
wdelaney@rc-legal.com

Richard A. Licht, Esq.
Tillinghast Licht, LLP
10 Weybosset Street
Providence, RI 02903
rlicht@tllaw.com