UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>ARNOLD KILBERG,<br><br>Debtor. | Case No. 04-10632-ANV<br>Chapter 7 |
| JOSEPH M. DIORIO, CHAPTER 7 TRUSTEE OF ARNOLD KILBERG,<br><br>Plaintiff,<br><br>v.<br><br>56 ASSOC., A Rhode Island Limited Liability Partnership and 57 ASSOC., A Rhode Island Limited Liability Partnership,<br><br>Defendants. | Adv. Pro. No. 05- |

**COMPLAINT TO OBTAIN APPROVAL TO SELL REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(h)**

Plaintiff, Joseph M. DiOrio, in his capacity as the duly appointed Chapter 7 Trustee of Arnold Kilberg brings this action pursuant to 11 U.S.C. §363(h) and Rule 7001(3) of the Federal Rules of Bankruptcy Procedure to obtain Court approval to sell the interest of the estate and the co-owners, 56 Assoc. and 57 Assoc., in certain real property.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. §§ 151 and 157.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(K), (N), and/or (O).

3. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1409.

## PARTIES

4. The Plaintiff, Joseph M. DiOrio, (the "Trustee"), is the duly appointed Chapter 7 Trustee of Arnold Kilberg (the "Debtor"), pursuant to the Order of the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"), entered in Case No. 04-10632-ANV.

5. Upon information and belief, the Defendants, 56 Assoc. and 57 Assoc., are both Rhode Island limited liability partnerships with offices at 57 Eddy Street, Providence, Rhode Island 02903.

## BACKGROUND

6. On March 1, 2004, (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code.

7. Upon Motion by the Office of the United States Trustee, the Bankruptcy Court appointed the Plaintiff the Chapter 11 Trustee of the Debtor.

8. On August 5, 2004, the subject bankruptcy action was converted to a Chapter 7 proceeding. Plaintiff was appointed the Chapter 7 Trustee.

## THE PROPERTY

9. The Defendants each own an undivided one-quarter interest in a property located at 165 Angell Street, Providence, Rhode Island (the "Property").

10. By Quitclaim Deed dated March 21, 2003, the Debtor, for no consideration and within one year of the Petition Date, transferred his undivided one-half interest in the Property to his wife, Joan F. Kilberg ("Mrs. Kilberg").

11. On or about May 14, 2004, the Chapter 7 Trustee commenced an adversary proceeding (A.P. 04-1016) ("Adversary Proceeding") against Mrs. Kilberg seeking to recover the

Debtor's interest in the Property on behalf of the Kilberg Bankruptcy Estate. The grounds for the requested relief included, *inter alia*, 11 U.S.C. § 550.

12. On December 1, 2004, the Bankruptcy Court approved the Chapter 7 Trustee's settlement with Mrs. Kilberg of the Adversary Proceeding. The settlement provided for the recovery of the Kilberg Bankruptcy Estate's interest in the Property.

13. By Quitclaim deed dated January 24, 2005, and recorded January 28, 2005, the Kilberg Bankruptcy Estate formally recovered the Property.

14. The Property is located in the heart of the East Side of Providence where the real estate market is vibrant. It is in the best interest of the Kilberg Bankruptcy Estate to market this valuable Property as an entirety as soon as possible.

**COUNT I**

15. The Plaintiff restates and realleges Paragraphs 1 through 14 above.

16. Prior to the Petition Date, the Debtor possessed certain right, title, and/or interest in the Property.

17. As of the Petition Date, all right, title and/or interest of the Debtor in the Property passed to the Chapter 7 Trustee.

18. Partition in kind of the Property among the Estate and Defendants is impracticable.

19. A sale of the Estate's undivided one-half co-ownership interest in the Property would realize significantly less for the Estate than a sale of the Property free of Defendants' interests in the Property.

20. The benefit to the Estate of a sale of the Property free of the Defendants' interests outweighs the detriment, if any, to Defendants.

21. The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

22. Prior to the consummation of a sale of the Property, Defendants shall have the opportunity under 11 U.S.C. § 363(i) to purchase the Property at the price at which a proposed sale is to be consummated.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order on Count I:

1) Authorizing the Chapter 7 Trustee to sell the Property free and clear of all liens and free and clear of the interests of any co-owner;

2) Directing that upon such a sale, the net proceeds be divided with fifty (50%) percent going to the Kilberg Bankruptcy Estate, twenty-five (25 %) percent to 56 Assoc., and twenty-five (25 %) percent to 57 Assoc., after payment of all real estate taxes, brokerage costs, attorneys' fees associated with the sale of the Property incurred by or on behalf of the Kilberg Bankruptcy Estate, and miscellaneous costs including recording fees; and

3) Granting any other such relief as is just and equitable.

Respectfully submitted,

JOSEPH M. DIORIO, CHAPTER 7
TRUSTEE OF ARNOLD KILBERG

By his Attorneys,
HOLLAND & KNIGHT LLP

/s/ Joseph M. DiOrio
Joseph M. DiOrio, Esq. (#2616)
Stephen A. Izzi, Esq. (#2928)
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
Tel.: (401) 824-5100
Fax:. (401) 553-6850

Dated: February 29, 2005

## Certificate of Service

I hereby certify that on February 29, 2005, I electronically filed the Complaint to Obtain Approval To Sell Real Property Pursuant To 11 U.S.C. § 363(h) with the Clerk of the Bankruptcy Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

- **Patricia Antonelli**
  pa@psh.com
- **Edward G. Avila**
  eavila@rcfp.com mmacknight@rcfp.com
- **Thomas E. Carlotto**
  tec@shlawri.com rcarney@shlawri.com
- **Leonard J. DePasquale**
  ustpregion01.pr.ecf@usdoj.gov
- **Andrew S. Harmon**
  ribk@harmonlaw.com
- **Edward G. Lawson**
  lawsonlaw@cox.net lawsonlaw2@cox.net;lawsonlaw3@cox.net
- **Thomas J. Walsh**
  ribk@harmonlaw.com twalsh@harmonlaw.com

and I hereby certify that I have mailed by United States Postal Service, postage pre-paid, the document electronically filed with the court to the following non CM/ECF participants:

Cheryl Asquino
Legal Counsel
Narragansett Bay Commission
1 Service Road
Providence, RI 02905

Robert E. Bollengier
Robert E. Bollengier Law Offices
3214 Post Road
PO Box 7617
Warwick, RI 02887

Christine K. Bush
Duffy Sweeney and Scott
One Turks Head Place Suite 1200
Providence, RI 02903

Edward D. Feldstein
Roberts Carroll Feldstein & Peirce
10 Weybosset Street - 8th floor
Providence, RI 02903

Richard L. Gemma
MacAdams & Weick
101 Dyer Street Fourth Floor
Providence, RI 02903

Stacey P. Nakasian
Duffy & Sweeney
One Turks Head Place Suite 1200
Providence, RI 02903

Adam C. Robitaille
Roberts Carroll Feldstein & Peirce
10 Weybosset Street - 8th floor
Providence, RI 02903

Justin T. Shay
Cameron and Mittleman
56 Exchange Terrace
Providence, RI 02903

Douglas H. Smith
140 Reservoir Avenue
Providence, RI 02903

Joseph Ferrucci, Esq.
Christopher M. Mulhearn, Esq.
Ferrucci Russo PC
55 Pine Street
Providence, RI 02903

Lawrence L. Goldberg
92 Jefferson Boulevard
Warwick, RI 02888

William R. Grimm
Hinckley Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Arnold Kilberg
642 Blackstone Boulevard
Providence, RI 02906

Michael Kelley, Esq.
55 Pine Street
Providence, RI 02903

Edward Bertozzi, Esq.
Edwards & Angell
2800 Financial Plaza
Providence, RI 02903

Department of Employment and Training
Attn: Legal
1511 Pontiac Avenue
Cranston, RI 02920

Arlene M. Embrey, Esq.
Office Of General Counsel, 7th Floor
U. S. Small Business Administration
409 Third Street, S.W.
Washington, DC 20416

Merrill J. Friedemann
Wallick & Associates
51 Jefferson Boulevard
Warwick, RI 02888

/s/ Stephanie M. Peltier

# 2582615_v1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **In re:**<br><br>**ARNOLD KILBERG,**<br><br>**Debtor** | **Case No. 04-10632-ANV**<br>**Chapter 7** |
| **JOSEPH M. DIORIO, CHAPTER 7 TRUSTEE OF ARNOLD KILBERG,**<br><br>**Plaintiff**<br>**v.**<br><br>**56 ASSOC., A Rhode Island Limited Liability Partnership and 57 ASSOC., A Rhode Island Limited Liability Partnership**<br><br>**Defendants.** | **Adv. Pro. No. 05-0/011** |

**DEFENDANTS' ANSWER AND COUNTERCLAIM TO TRUSTEE'S COMPLAINT TO OBTAIN APPROVAL TO SELL REAL PROPERTY**

**NOW COMES,** the Defendants, 56 Assoc. and 57 Assoc. (collectively hereinafter the "Defendants"), and hereby Answers the Complaint brought by Joseph M. DiOrio in his capacity as Chapter 7 Trustee of Arnold Kilburg (the "Plaintiff") pursuant to 11 U.S.C. §363(h) and Rule 7001(3) of the Federal Rules of Bankruptcy Procedure and asserts a counter claim.

**JURISDICTION AND VENUE**

1. The allegations in paragraph 1 of the Plaintiff's Complaint state a conclusion of law of which no response is required. To the extent any response is required, the

FILED APR 20 '05 14:29 USBCRI

Defendants deny the allegations in paragraph 1 of the Complaint and therefore call upon the Plaintiff to prove the same.

2. The allegations in paragraph 2 of the Plaintiff's Complaint state a conclusion of law of which no response is required. To the extent any response is required, the Defendants deny the allegations in paragraph 2 of the Complaint and therefore call upon the Plaintiff to prove the same.

3. The allegations in paragraph 3 of the Plaintiff's Complaint state a conclusion of law of which no response is required. To the extent any response is required, the Defendants deny the allegations in paragraph 3 of the Complaint and therefore call upon the Plaintiff to prove the same.

**PARTIES**

4. The Defendants admit the averments contained in paragraph 4 of the Plaintiff's Complaint.

5. The Defendants admit the averments contained in paragraph 5 of the Plaintiff's Complaint.

**BACKGROUND**

6. The Defendants admit the averments contained in paragraph 6 of the Plaintiff's Complaint.

7. The Defendants admit the averments contained in paragraph 7 of the Plaintiff's Complaint.

8. The Defendants admit the averments contained in paragraph 8 of the Plaintiff's Complaint.

**THE PROPERTY**

9. The Defendants admit the averments contained in paragraph 9 of the Plaintiff's Complaint.

10. The Defendants are without sufficient information to admit or deny the allegations set forth in paragraph 10 of the Plaintiff's complaint and therefore calls upon the Plaintiff to prove the same.

11. The Defendants are without sufficient information to admit or deny the allegations set forth in paragraph 11 of the Plaintiff's complaint and therefore calls upon the Plaintiff to prove the same.

12. The Defendants are without sufficient information to admit or deny the allegations set forth in paragraph 12 of the Plaintiff's complaint and therefore calls upon the Plaintiff to prove the same.

13. The Defendants are without sufficient information to admit or deny the allegations set forth in paragraph 13 of the Plaintiff's complaint and therefore calls upon the Plaintiff to prove the same.

14. The Defendants deny the averments contained in paragraph 14 of the Plaintiff's Complaint.

**COUNT I**

15. Defendants hereby adopt and incorporate their responses to paragraphs 1-14 of the Plaintiff's Complaint as fully set forth therein.

16. The Defendants admit the averments contained in paragraph 16 of the Plaintiff's complaint.

17. The allegations in paragraph 17 of the Plaintiff's Complaint state a conclusion of law of which no response is required. To the extent any response is required, the Defendants deny the allegations in paragraph 17 of the Complaint and therefore call upon the Plaintiff to prove the same.

18. The Defendants deny the averments contained in paragraph 18 of the Plaintiff's Complaint.

19. The Defendants deny the averments contained in paragraph 19 of the Plaintiff's Complaint.

20. The Defendants deny the averments contained in paragraph 20 of the Plaintiff's Complaint.

21. The Defendants admit the averments contained in paragraph 21 of the Plaintiff's Complaint.

22. The allegations in paragraph 22 of the Plaintiff's Complaint state a conclusion of law of which no response is required. To the extent any response is required, the Defendants admit the allegations in paragraph 22 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

The Plaintiff is estopped by its conduct from maintaining this cause of action.

### Third Affirmative Defense

The Plaintiff's Complaint is barred by the doctrine of waiver.

**Fourth Affirmative Defense**

The Plaintiff's Complaint is barred by the doctrine of estoppel.

**Fifth Affirmative Defense**

The Plaintiff's Complaint is barred by the doctrine of latches.

**Sixth Affirmative Defense**

The Plaintiff's claims are barred by and subject to offsets and recoupment.

**Seventh Affirmative Defense**

The Plaintiff's have failed to take actions to justify the relief claimed by them.

**Eighth Affirmative Defense**

The relief requested, if granted will result in a greater detriment to Defendants than any benefit to the Estate.

**WHEREFORE**, Defendants requests that all of the Plaintiff's claims asserted against Defendants be dismissed and that Defendants be awarded its attorney's fees and costs incurred in connection with defending this action together with such other relief as is just and equitable.

**COUNTERCLAIM**

**PARTIES**

1. The Defendants, 56 Assoc. and 57 Assoc. (the "Defendants") are both Rhode Island limited liability partnerships with offices at 57 Eddy Street, Providence, Rhode Island.

2. The Plaintiff, Joseph M. DiOrio, (the "Trustee"), is the duly appointed Chapter 7 Trustee of Arnold Kilberg (the "Debtor"), pursuant to the United States

Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"), entered in Case No. 04-10632-ANV.

3. The Defendants and the Debtor each own a one-half interest as tenants in common in the commercial property located at 165 Angell Street in Providence, Rhode Island.

**JURISDICTION**

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §§ 151 and 157.

**BACKGROUND**

5. The above Defendants hereby incorporate by reference the allegations set forth in paragraphs one (1) through four (4) of the Defendants' Counterclaim and paragraphs (6) –(9) of Plaintiff's Complaint against Defendants, 56 & 57 Assoc. pursuant to 11 U.S.C. §363 (h).

6. Mr. & Mrs. Sau Kim are the tenants (the "Tenants") leasing the first floor of commercial property located at 165 Angel Street (the "Property") which is where they operate their business, Asian Paradise.

7. In January 2005, the Chapter 7 Trustee obtained all of Arnold Kilberg's right, title and interest in the Property to writ a one-half interest as tenants in common through a settlement of and adversary proceeding regarding the Kilberg Bankruptcy Estate's interest in the Property.

8. The Defendants still own a one-quarter (1/4) interest each in the Property as tenants in common for a total of one-half (1/2) interest in the Property.

9. The first floor of the Property is currently leased to the Tenants pursuant to a Lease Agreement.

10. The Tenants are unable to operate Asian Paradise and pay their rent; consequently, they have incurred Eighteen Thousand ($18,000.00) dollars in back rent.

11. The Tenants are desirous of selling their business to Sipin Tongsap who has requested a new lease extension of the Property, wherein, Sipin Tongsap is to take over the restaurant and assume the lease and extension thereof. *See* Exhibit A (proposal to Joseph DiOrio). The Defendant believes the terms of and the extension of the lease is in the best interest of all parties and will enhance the revenue of the Property and pay the back rent due from Asian Paradise. *See* Exhibit A.

12. The Tenants are unable to transfer the lease as the Plaintiff has refused to consent to such lease transfer. *See* Letter to Plaintiff attached hereto as Exhibit B, a copy of Joseph M. DiOrio's correspondence.

13. The actions of the Plaintiff have damaged the Defendant and the Estate and have reduced the income from the Property for all parties in interest.

**COUNT I**

***(Tortious Interference with a Business Advantage and Business Relationship against, Joseph M. DiOrio in his capacity as Chapter 7 Trustee)***

14. Defendants hereby incorporate by reference the allegations set forth in paragraphs one (1) through eleven (13) of the Defendant's Counterclaim.

15. Upon assuming right, title and interest of the Debtor in the Property, the Trustee knew of the contract in existence between Kilberg, the Defendants and the Tenants.

16. The Plaintiff intentionally and maliciously interfered with the contract between the Defendants and the Tenants when he hampered and prohibited the Defendants from extending the lease contract to establish a favorable lease with Sipin Tongsap for the Property for the first floor.

17. As a direct and proximate result of the Plaintiff's intentional interference with the proposed lease to Sipin Tongsap the Defendants have suffered damages in an amount in excess of $100,000 over the course of the proposed lease period.

**WHEREFORE,** the Defendants demand judgment against the Plaintiff, Joseph M. DiOrio, Chapter 7 Trustee for all damages provable at trial for the Plaintiff's interference with business advantage; loss of rent, revenue, charges for real estate taxes and CAM charges and for costs incurred as a result of the Plaintiff's actions and inactions plus attorneys' fees, costs and expenses incurred in prosecuting this instant action.

## COUNT II
***(Order Requiring the Trustee to Execute the Proposed Lease Extension)***

18. Defendants hereby incorporate by reference the allegations set forth in paragraphs one (1) through seventeen (17) of the Defendant's Counterclaim.

19. The Defendant's seek to extend the Lease Agreement allowing for the Tenants to transfer their business to a new entity that will pay the rent, additional rent and cure any existing defaults.

20. An extension of the Lease Agreement will be in the best interest of the Property and its owners as it will provide for higher rent and a more stable revenue source.

21. In refusing to permit the extension and revision to the Lease Agreement, the Plaintiff has caused the Property to be reduced in value and caused the Defendant's to incur a lost of revenue.

**WHEREFORE,** the Defendant's request that this Honorable Court Order the Plaintiff to execute a lease extension permitting for an assignment of the Lease to a new entity. The Defendant's request this Court for an award of attorneys' fees, cost and expenses associated with this matter and any other relief deemed meet and just by this Honorable Court.

Respectfully submitted:

**56 ASSOC. and 57 ASSOC.**

By and through its attorneys,

Michael A. Kelly, Esq.(#2116)
John O. Mancini, Esq.(#6061)
55 Pine Street, Suite 5000
Providence, Rhode Island 02903
Tel. (401) 490-7334
Fax. (401) 490-7874

Dated: April 20, 2005

**CERTIFICATION**

I hereby certify that on April 20th, 2005, I mailed by United States Postal Service, postage pre-paid, the above Answer to Complaint and Defendants' Counter Claim filed with the Court to the following participants:

Cheryl Asquino
Legal Counsel
Narragansett Bay Commission
1 Service Road
Providence, RI 02905

Robert E. Bollengier
Robert E. Bollengier Law Offices
3214 Post Road
P.O. Box 7617
Warwick, RI 02887

Edward D. Feldstein
Roberts Call Feldstein & Peirce
10 Weybosset Street –8th Floor
Providence, RI 02903

Richard L. Gemma
MacAdams & Weick
101 Dyer Street, 4th Floor
Providence, RI 02903

Lawrence L. Goldberg
92 Jefferson Boulevard
Warwick, RI 02888

William R. Grimm
Hinckley Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Stacey P. Nakasian
Duffy Sweeney & Scott
One Turks Head Place, Suite 1200
Providence, RI 02903

Adam C. Robitaille
Roberts Carroll Feldstein & Peirce
10 Weybosset Street – 8th Floor
Providence, RI 0200-3

Justin T. Shay
Cameron and Mittleman
56 Exchange Terrace
Providence, RI 02903

Douglas H. Smith
140 Reservoir Avenue
Providence, RI 02903

Edward Bertozzi, Esq.
Edwards & Angell
2800 Financial Plaza
Providence, RI 02903

Department of Employment and Training
Attn: Legal
1511 Pontiac Avenue
Cranston, RI 02920

Arnold Kilberg
642 Blackstone Boulevard
Providence, RI 02906

Merrill J. Friedemann
Wallick & Associates
51 Jefferson Boulevard
Warwick, RI 02888

Edward G. Larson, Jr.
260 Lonsdale Avenue
Pawtucket, RI 02860

Leonard J. DePasquale
Assistant U.S. Trustee
10 Dorrance Street
Suite 910
Providence, RI 02903

Edward G. Avila
Roberts, Carroll, Feldstein & Pierce
10 Weybosset Street
Providence, RI 02093

Christine K. Bush
Duffy Sweeney & Scott
One Turks Head Place
Suite 1200
Providence, RI 02903

Mark P. Harmon
150 California Street
Newton, MA 02458

Arlene M. Embrey, Esq.
Office of General Counsel, 7th Floor
U.S. Small Business Administration
409 Third Street, S.W.
Washington, DC 20416

Patricia Antonelli, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Thomas E. Carlotto
Shechtman Halperin Savage, LLP
86 Weybosset Street
Providence, RI 02903

Joseph M. DiOrio
Stephen A. Izzi
One Financial Plaza, Suite 1800
Providence, RI 02903

Joseph Ferrucci
Christopher M. Mulhearn
Ferrucci Russo PC
55 Pine Street
Providence, RI 02903

Thomas J. Walsh
150 California Street
Newton, MA 02458

# LAW OFFICES OF MICHAEL A. KELLY

*Attorneys and Counselors at Law*

MICHAEL A. KELLY
admitted in RI and MA
Cumberland Office-Tel/Fax:401-333-0807
mkelly@maklawfirm.com

JOHN O. MANCINI
of counsel
admitted in RI, MA, CT
Cranston Office-Tel: 401-464-8059
jmancini@maklawfirm.com

March 29, 2005

Joseph DiOrio
Holland & Knight, LLP
One Financial Plaza, Suite 1800
Providence, RI 02903

***RE: Offer to Lease Property at 165 Angell Street***

Dear Mr. Paolino:

As we discussed, this office is legal counsel to Mrs. Kim with regards to her tenancy and proposed transfer of business lease for her restaurant known as Asian Paradise located at 165 Angell Street in Providence, Rhode Island (the "Property"). My client has the ability to transfer the business but cannot do so unless the current lease is extended.

My client has been approached by an interested tenant for the Property and proposed lease terms have been discussed between the parties and attached hereto. Acceptance of this lease offer through extension of the lease would provide the Lessor with a triple net lease including back rent as well as $14,000.00 in property and water bills and $10,000.00 in real estate taxes and CAM charges.

In accordance with our prior discussions, I will be applying to the Bankruptcy Court to remove the stay and approve this offer.

Sincerely,

Michael A. Kelly

MAK/mes

Enclosures

cc: Client

Holland+Knight

Tel 401 751 8500
Fax 401 553 6850

Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903
www.hklaw.com

Joseph M. DiOrio
401 824 5178
joseph.diorio@hklaw.com

March 1, 2005

VIA FAX AND FIRST CLASS MAIL

Michael Kelly, Esq.
55 Pine Street
Providence, Rhode Island 02903

Re: Joseph M. DiOrio v. 56 Associates, L.P., et al
AP No. 05-01011

Dear Michael:

This will confirm that you have agreed to accept service on behalf of 56 and 56 Associates, L.P. in connection with the above-referenced adversary proceeding.

As I also indicated to you, I do not consent to the ten proposed year lease transaction with a new restaurant in place of the Asian Paradise. Such a transaction, in my view, will not enhance the sale price for the property.

Please advise immediately if your clients will continue to pursue this transaction notwithstanding my position. If necessary, I will seek injunctive relief.

Thank you for your cooperation.

Very truly yours,

HOLLAND & KNIGHT, LLP

Joseph M. DiOrio

JMD:smp

Cc: Stephen A. Izzi, Esq.

Ex. 5

Holland+Knight

Tel 401 751 8500
Fax 401 553 6850

Holland & Knight LLP
One Financial Plaza, Suite 1800
Providence, RI 02903
www.hklaw.com

Joseph M. DiOrio
401 824 5178
joseph.diorio@hklaw.com

March 1, 2005

VIA FAX AND FIRST CLASS MAIL

Michael Kelly, Esq.
55 Pine Street
Providence, Rhode Island 02903

Re: Joseph M. DiOrio v. 56 Associates, L.P., et al
AP No. 05-01011

Dear Michael:

This will confirm that you have agreed to accept service on behalf of 56 and 56 Associates, L.P. in connection with the above-referenced adversary proceeding.

As I also indicated to you, I do not consent to the ten proposed year lease transaction with a new restaurant in place of the Asian Paradise. Such a transaction, in my view, will not enhance the sale price for the property.

Please advise immediately if your clients will continue to pursue this transaction notwithstanding my position. If necessary, I will seek injunctive relief.

Thank you for your cooperation.

Very truly yours,

HOLLAND & KNIGHT, LLP

Joseph M. DiOrio

JMD:smp

Cc: Stephen A. Izzi, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br>Arnold Kilberg,<br>Debtor | Case No. 04-10632-ANV<br>Chapter 7 |
| Joseph M. DiOrio, Chapter 7 Trustee of Arnold Kilberg,<br>Plaintiff,<br>v.<br>56 Assoc., A Rhode Island Limited Liability Partnership and 57 Assoc., A Rhode Island Limited Liability Partnership,<br>Defendants. | Adv. Pro. No. 05-01011 |

## JOINT PRETRIAL ORDER

Now Come Plaintiff, Joseph M. Diorio, the Chapter 7 Trustee of Arnold Kilberg and Defendants, 56 Assoc. and 57 Assoc. and submit the following Joint Pretrial Order.

**1. Agreed Facts:**

a. The Plaintiff, Joseph M. DiOrio, (the "Trustee") is the duly appointed Chapter 7 Trustee of Arnold Kilberg (the "Debtor"), pursuant to the Order of the United States Bankruptcy Court for the District of Rhode Island (the "Bankruptcy Court"), entered in Case No. 04-10632-ANV.

b. The Defendants, 56 Assoc. and 57 Assoc., are both Rhode Island limited liability partnerships with offices at 57 Eddy Street, Providence, Rhode Island 02903.

c. On March 1, 2004 (the "Petition Date"), the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code.

d. Upon motion of the Office of the United States Trustee, the Bankruptcy Court appointed the Plaintiff the Chapter 11 Trustee of the Debtor.

e. On August 5, 2004, the subject bankruptcy action was converted to a Chapter 7 proceeding. Plaintiff was appointed the Chapter 7 Trustee.

f. The Defendants each own an undivided one-quarter interest as tenants in common in a property located at 165 Angell Street, Providence, Rhode Island (the "Property").

g. The Estate of Arnold Kilberg (the "Estate") owns an undivided one-half interest in the Property as a tenant in common.

h. The Trustee holds all right, title, and interest in the one-half interest in the Property on behalf of the Estate.

i. The Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light, or power.

j. Partition in kind by subdivision of the Property into separate and distinct lots is impracticable.

**2. Facts to be Litigated:**

a. Whether the sale of the Estate's undivided one-half co-ownership interest in the Property would realize significantly less for the Estate than a sale of the Property free of Defendants' interests in the Property.

b. Whether the benefit to the Estate of a sale of the Property free of Defendants' interests outweighs the detriment, if any, to Defendants.

c. Whether partition in kind by conversion into condominiums is impracticable.

**3. Witnesses:**

<u>Plaintiff's Witnesses</u>:

a. William Greene, of Hayes & Sherry Real Estate Services, is a real estate broker who will testify, *inter alia*, regarding the feasibility of selling the Estate's 50% tenancy in common interest in the Property and his marketing efforts regarding the sale of that interest. If necessary, Mr. Greene will testify regarding the impracticability of partition in kind.

b. Peter Scotti, of Peter M. Scotti & Associates, Inc., is a real estate appraiser who will testify, *inter alia*, regarding the value of the Property, including the value of the Estate's tenant in common interest. If necessary, Mr. Scotti will testify regarding the impracticability of partition in kind.

c. William Hazel, Esq., of Chu, Ring & Hazel LLP, with extensive knowledge in the area of federal taxation, will testify, *inter alia*, regarding tax free exchanges of real estate under § 1031 of the Internal Revenue Code.

d. Joseph Paolino, Sr. (if necessary)

e. Joseph Paolino, Jr. (if necessary)

Defendants' Witnesses:

a. Steven Dylag, of Keystone Consulting Group, will testify regarding the value of the Property.

b. F. Moore McLaughlin, IV, Esq., of the Law Offices of F. Moore McLaughlin, IV, LLC, will testify as to the possible unavailability of § 1031 treatment for the benefit of the Defendants.

c. Joseph Paolino, Sr., will testify as to his intentions to retain title to the Property and the reasons therefor, including not objecting to the Trustee selling his interest in the Property.

d. Joseph Paolino, Jr., will testify as to his intentions to retain title to the Property and the reasons therefor, including not objecting to the Trustee selling his interest in the Property.

**4. Exhibits:**

Plaintiff's Exhibits:

Exhibit A – Brown University offer to purchase the entire fee interest in the Property, dated April 12, 2007.

Exhibit B – Brown University letter dated April 18, 2007.

Exhibit C – Purchase and Sale Agreement between the Trustee and Brown University regarding the Estate's tenancy in common interest in the Property, dated October 19, 2006.

Exhibit D – Letter to Joseph M. DiOrio, Chapter 7 Trustee of the Estate of Arnold Kilberg, from Abigail Rider, Director Real Estate & Administrative Services, Brown University, dated November 30, 2006

Exhibit E – Marketing letters and advertisements for the sale of the Property produced by William Greene.

Exhibit F - Market Valuation Proposal dated February 14, 2005, prepared by Hayes & Sherry.

Exhibit G – Appraisal reports generated by Peter Scotti valuing the Property.

Exhibit H – §1031 report prepared by William Hazel.

Exhibit I – CY 2005 and CY 2006 Operating statements for 165 Angell Street, Providence, Rhode Island.

Defendants' Exhibits:

Exhibit 1 – Appraisal report prepared by Steven Dylag.

The parties have exchanged copies of all the above described exhibits.

**5. Issues of Law:**

a. Whether any detriment to Defendants will arise as a consequence of an order by this Court allowing a sale of the entire fee simple interest of the Property.

b. Whether the Defendants can establish a substantial detriment from a sale of the entire fee simple interest of the Property, under 11 U.S.C. §363(h) which outweighs the benefit to the Estate from the sale of the entire fee simple interest in the Property.

**6. Discovery:**

Discovery is in the process of completion. It is being conducted on an expedited basis. Both Plaintiff and Defendants have submitted all relevant discovery requests to the opposing parties, have received the necessary responses to all discovery requests, have deposed or are deposing all relevant parties, have performed all necessary inspections of the property. Discovery will be complete by the trial date.

**7. Referral to Settlement Judge:**

Neither Plaintiff nor Defendants believe the matter should be referred to a settlement judge prior to trial.

**8. Trial Readiness:**

Both the Plaintiff and Defendants are ready for trial. Plaintiff and Defendants estimate the entire time for trial to require at least two days.

Respectfully submitted:
Joseph M. DiOrio,
Trustee of Arnold Kilberg

/s/ Joseph M. DiOrio
Joseph M. DiOrio, Esq. (#2616)
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, Rhode Island 02903
(401) 632-0911 / Fax: (401) 632-075

Dated: April 23, 2007

56 Assoc. and 57 Assoc.

/s/William J. Delaney
William J. Delaney, Esq. (#3643)
Tillinghast Licht LLP
10 Weybosset Street, 10th Floor
Providence, Rhode Island 02903
(401) 456-1200 / Fax: (401) 456-1210

Dated: April 23, 2007

ALL-STATE H

BROWN

ELIZABETH C. HUIDEKOPER
Executive Vice President
Finance and Administration

April 12, 2007

Mr. Joseph DiOrio, Esq.
Law Offices of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, RI 02903

Dear Joe:

On November 30, 2006, Brown University notified you that based upon the results of its due diligence inspection it could not justify a purchase of a 50% interest in the property referred to in the City of Providence Tax Assessor's records as 165 Angell Street on Plat 12, Lot 169, consisting of a 7,904 sf building with two lower floors of retail space and two upper floors comprising 8 rental apartments and the land on which it is located ("the Property"). At that time, it was mentioned that Brown University would consider a purchase of the Property if 100% interest in the property became available. As a follow-up to that letter, to I am conveying to you on behalf of Brown University ("Brown" or the "University") an offer to purchase the Property, should 100% of the fee interest in the Property become available for sale. Said offer is conditioned upon your obtaining authorization to sell the entire fee interest in the Property as Trustee of the estate of Arnold Kilberg and subject to the approval of the Corporation of Brown University and the negotiation, execution and delivery of a mutually satisfactory purchase and sale agreement that includes, but is not limited to, the following business terms and conditions:

| | |
|---|---|
| Property: | 165 Angell Street, Providence, RI 02906 (the "Property") |
| Seller: | Joseph M. DiOrio, Chapter 7 Trustee of the estate of Arnold Kilberg, case number 04-10632 ("Trustee"). 56 Associates, Inc. and 57 Associates, Inc. as cotenants, each holding a 25% interest in the Property shall also be named as Sellers to the extent required by law to effectuate a legal transfer and insurable interest of the entire fee in the Property,. |
| Assessor's Parcel: | 012-0169-0000 |
| Purchase Price: | $1,300,000 |
| Conditions of Sale: | The Seller must provide Brown with proper documentation of authority to sell the Property, including any necessary and pertinent court orders and releases of Arnold Kilberg, 56 Associates, Inc., 57 Associates, Inc. and any other person with any right, title, or interest in the Ownership Interest. The Seller must obtain and provide Brown with all requisite court approvals for the sale of the Property and of the terms of the transaction as set forth in this offer and in the Purchase and Sale Agreement. In the event that the Seller does not obtain the requisite court approval of the sale to Brown upon the agreed upon terms and conditions, or the Seller is required by the court to seek additional proposals or offers to purchase the |

| | |
|---|---|
| | Property, Brown shall be under no obligation to purchase the Property. |
| Purchase and Sale Agreement; Internal Approvals: | This offer is subject to the negotiation, execution and delivery of a mutually acceptable purchase or sale agreement on or before April 30, 2007 and to review and approval by the Corporation of Brown University. While approval of the Corporation of Brown University will be sought as soon as possible to enable the closing date to occur on the Closing Date specified herein, Brown will not be bound by the terms of this offer nor complete a purchase of the Property until and unless such approval is obtained. |
| Deposit: | $50,000 deposit of earnest money, payable into escrow at the signing of a purchase and sale agreement and credited to the purchase price at closing. This deposit is non-refundable except in the event that Seller defaults in the completion of the sale or is unable to meet the conditions for sale as set forth in the purchase and sale agreement, in which case Brown shall be entitled to receive a full refund on the earlier of (1) the date ten days after the date on which Seller first learns that it will be unable to complete the sale or (2) the date ten days after the occurrence of such default. |
| Due Diligence: | Brown shall have the right to reinspect the Property during the twenty (20) business days immediately preceding the Closing Date in order to determine that no material adverse change has occurred to the physical or financial condition of the Property since Brown performed its due diligence investigations of the Property in November 2006. Such reinspection shall include but not be limited to surveys, title examinations, structural inspections, environmental and hazardous waste inspections, review of leases and leasing arrangements, zoning, and all business and financial agreements with the cotenants. If Brown determines as a result of its reinspection that a material adverse change has occurred, then Brown shall be under no obligation to purchase the Property and the Seller will return to Brown within ten (10) days its $50,000 deposit. |
| Title: | Seller shall have insurable title to the Property and Brown must be able to obtain insurable title free and clear of all encumbrances and easements. |
| Liens: | Seller shall deliver the Property to Brown free and clear of all encumbrances. Any existing financing secured by the Property must be repaid by Seller prior to purchase by Brown. All fees that may be due to any lender to the Property and any other expenses incurred as a consequence of repaying any such financing and removing all encumbrances on the Property shall be for the account of the Seller. |
| Management Control: | From the date of the signing of the purchase and sale agreement until the Closing Date, Trustee shall continue to manage its ownership interest in the Property but will provide Brown with an opportunity to review and approve all transactions requiring material financial and/or legal decisions, including but not limited to leasing terms, repairs, rental and parking rates, and insurance coverage amounts, such approval not to be unreasonably withheld. |
| Closing Date: | The closing date shall be the earlier of (1) 20 business days after the date on which all encumbrances on the Property are removed or (2) July 1, 2007 but no earlier than June 1, 2007 without the express written consent of Brown.. |
| Brokers: | Trustee and Brown warrant that Hayes & Sherry is the only broker involved in this transaction and any and all broker's fees on this transaction will be paid by Seller. |
| Other Terms and | Purchase and sale agreement will be subject to legal review by Counsel for Brown. |

Conditions:

Exclusive: From the date of acceptance of this offer until such time as a mutually satisfactory purchase and sale agreement is negotiated and signed, Trustee shall not offer the property nor Trustee's ownership interest in the Property for sale nor negotiate for the sale of the property or the Trustee's ownership interest in the property with any third parties.

Offer Expiry Date: This offer shall expire and will become null and void at 5:00 pm Eastern Daylight Time on April 30, 2007.

Should these terms and conditions be acceptable to you, please so indicate by signing the enclosed copy of this letter and returning it no later than 5 pm on April 30, 2007 to:

Elizabeth C. Huidekoper
Executive Vice President for Finance and Administration
Box 1940
Brown University
Providence, RI 02912

Sincerely,

Elizabeth C. Huidekoper
Executive Vice President for Finance and Administration

Accepted on behalf of Trustee :

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

ALL-STATE LEGAL C

Law Office of Joseph M. DiOrio, Inc.

10 Dorrance Street, Suite 1200
Providence, Rhode Island 02903
Phone: (401) 632-0911
Fax: (401) 632-0751

October 19, 2006

Joseph M. DiOrio
*Admitted in RI and MA*
jmdiorio@dioriolaw.com

VIA HAND DELIVERY

Yolanda Lamboy, Esq.
Brown University
27 Brown Street
Providence, Rhode Island 02912

*Re: 165 Angell Street, Providence, Rhode Island (the "Property")*

Dear Ms. Lamboy:

Enclosed is a copy of the Order Authorizing Trustee to Sell Certain Assets Free and Clear of Liens Pursuant to 11 U.S.C. §363 in connection with the Property.

I have also enclosed a original signed copy of the Real Estate Purchase and Sale Agreement with respect to the Property.

Thank you.

Very truly yours,

Joseph M. DiOrio

Cc: William Greene (w/enclosures)

# REAL ESTATE PURCHASE AGREEMENT

THIS AGREEMENT is made and entered into by and between JOSEPH M. DIORIO, in his capacity as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Arnold Kilberg, BK No. 04-10632 (hereinafter referred to as the "Bankruptcy Estate"), and not individually, with a mailing address for purposes of this Agreement c/o Law Office of Joseph M. DiOrio, Inc., 10 Dorrance Street, Suite 1200, Providence, Rhode Island 02903 (the "Seller") and Brown University, a not-for-profit corporation established by charter under the laws of the State of Rhode Island, with a mailing address for the purposes of this Agreement of Office of Real Estate and Administrative Services, Brown University, Box 1902, Providence, Rhode Island 02912 (the "Buyer"), or its nominee.

WITNESSETH THAT

1. PREMISES AND PURCHASE PRICE

Trustee agrees to sell and convey to Buyer, and Buyer agrees to purchase, upon the terms and conditions hereinafter set forth, all of Seller's right, title and interest, free and clear of liens and mortgages, in and to the Trustee's fifty percent (50%) tenant-in-common interest (the "Seller's Interest") in and to that certain real estate with buildings and improvements thereon located at 165 Angell Street, Providence, Rhode Island (the "Premises"), and more particularly described in <u>Exhibit A</u> attached hereto and made a part hereof, for the purchase price of Six Hundred and Fifty Thousand Dollars ($650,000.00) ("Purchase Price"), of which a deposit (the "Deposit") of Fifty Thousand ($50,000.00) has been paid this day.

2. DATE OF THIS AGREEMENT

The Date of this Agreement shall be the date on which the Seller signs this Agreement as set forth immediately under the Seller's signature below.

3. TITLE

Conveyance of the Seller's Interest as aforesaid in the aforesaid real estate and the buildings and improvements thereon, and appurtenances thereto, shall be made by a Trustee's Deed ("Deed") in customary form as that attached hereto as <u>Exhibit B</u>, without covenants, warranties or representations of any kind whatsoever, conveying to the Buyer all of the Seller's right, title and interest as a tenant-in-common in and to the Premises, free and clear of all liens, mortgages, security interests, monetary claims, encumbrances like monetary interests, including, but not limited to, any and all statutory liens, judgment liens or claims for municipal real estate or tangible property taxes. Title to the Premises shall be good and marketable and insurable by a nationally recognized title insurance company with an owner's title insurance policy at usual and customary premium rates. The conveyance of the Premises shall, however, be subject to all restrictions, easements and conditions of record, and subject to all state of facts which would be shown by an accurate survey.

30

4. POSSESSION

Upon conveyance of title to the Premises, full possession of the Premises shall be delivered to the Buyer in the same condition in which the same are as of the date of Buyer's signature on this Agreement, reasonable use and wear and damage by fire, the elements or other casualty otherwise covered by insurance excepted. Buyer's possession of the Premises shall be subject to the rights and interests of 56 Associates, LLP holder of a twenty-five percent (25%) tenant-in-common interest, and 57 Associates, P.C. holder of a twenty-five percent (25%) tenant-in-common interest.

5. PURCHASE PRICE

The agreed total Purchase Price for the Premises is as set forth and defined in Section 1 hereof.

6. THE CLOSING.

The Closing of the Premises is to be held at 10:00 A.M. on the twentieth (20th) business day following the later of the date on which the Court Order approving this Real Estate Purchase and Sale Agreement has been entered and the expiration of the Due Diligence period as hereinafter defined. At the Closing, Buyer shall pay the remainder of the Purchase Price set forth in Section 1 hereof by bank or certified check of immediate available funds drawn on a local bank and made payable to Joseph M. DiOrio, Chapter 7 Trustee of the Bankruptcy Estate of Arnold Kilberg. It is agreed and understood that TIME IS OF THE ESSENCE of this Agreement. At Closing, Buyer shall provide Seller with a copy of the Municipal Lien Certificate or other evidence of payment of taxes reasonably satisfactory to Buyer, if any, obtained by Buyer. At the Closing the Buyer's bank or certified check in the amount of the net proceeds of the sale of the Premises to Buyer as reflected on the Settlement Statement, subject to post-closing adjustments, if any, (to the extent that Seller is due any amount) shall be delivered to the Seller upon recording of the Deed. Buyer agrees to record the Deed in the appropriate recording office forthwith as soon as reasonably possible after delivery of same. Buyer shall notify Seller forthwith of the recording of the Deed. This provision shall be deemed to survive the Closing.

Buyer may reinspect the Premises prior to the Closing. If the condition of the Premises has materially adversely changed from its condition during the hereinafter defined "Due Diligence Period", then Buyer shall have the right to terminate this Agreement in accordance with the notice provisions hereof, the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder.

7. ADJUSTMENTS

7.1. Charges, Assessments and Apportionable Items Other Than Taxes. Rents, fuel, water charges, sewer assessment charges and sewer use charges, if any, shall be apportioned between Seller and Buyer as of the date of delivery of the Deed based upon the periods (pre or post Closing) to which such charges relate. In the event that the actual charges are not available at the time of Closing, such charges shall be as estimated on the basis of the best information available at the time of Closing and based on Seller's fifty percent (50%) interest in the Premises, and the net amounts thereof shall be added to or deducted from the

Purchase Price, as the case may be. Any assessments and charges constituting a lien on the Premises which are payable over a period of more than one (1) year shall be apportioned in such manner that Seller shall pay all installments due during the appropriate calendar or municipal fiscal years prior to the year the Deed is delivered, and any installment due in the year the Deed is delivered shall be apportioned in such a manner , that Seller shall pay that portion thereof which corresponds to the portion of said year which has expired on the date of delivery of the Deed, and the Buyer shall pay or assume the balance of such assessment and charges based on Seller's Interest. Seller shall be responsible and shall pay Seller's fifty percent (50%) share of all expenses and utility charges based upon Seller's Interest for all utilities serving the Premises up to the date of Closing.

7.2. Taxes. On or before the Closing, Seller shall pay all real estate taxes as well as other taxes and assessments which are then due and payable and constitute a lien upon the Premises for any period prior to the then current year in which the date of delivery of the Deed occurs. Buyer hereby agrees to assume to pay when due all taxes and assessments based on Seller's Interest which are allowed as a credit against the Purchase Price. On the Closing Date, Real Estate taxes, tangible property taxes, and fire district taxes assessed upon the Premises as of December 31 of the year immediately preceding the year in which the delivery of the Deed occurs, applicable to the following year, shall be apportioned based on Seller's Interest on a calendar year basis, in accordance with the manner such taxes are customarily prorated in the municipality where the Premises are located, in such a manner that Seller shall pay, or, at Seller's election, allow to Buyer as a credit against the Purchase Price, that portion thereof which corresponds to the portion of said year which has expired on the date of delivery of the Deed, and Buyer shall pay or assume the balance. Seller shall pay or, at Seller's election, allow to Buyer as a credit against the Purchase Price, all other taxes which are a lien upon the Premises based on the Seller's Interest. In the event that at the time of delivery of the Deed the amount of such taxes shall not be definitely fixed and ascertainable, it shall, for the purposes of making such apportionment, be assumed that the amount of such taxes will be identical with those of the next prior assessment. Any further adjustment, if necessary, shall be made by the parties when the amount of said taxes is known. The Seller shall be entitled, at the Seller's discretion, to use any portion or all of the Purchase Price to pay any of the foregoing or any other liens or encumbrances against the Premises. In the event that a portion or all of the Purchase Price is used to pay any of the foregoing, the Settlement Agent shall provide copies of receipts or other evidence of payment satisfactory to the Sellers within forty-eight (48) hours of the recording of the Deed.

Buyer's obligation to make any payments pursuant to this Section 7 shall not exceed an amount based upon Seller's fifty (50%) interest in the Premises. It shall be Seller's responsibility to notify Buyer, in writing, prior to the Closing the process by which all real estate taxes, and other charges, assessments, fees, costs, and expenses are paid as between the Seller and the holders of the remaining fifty percent (50%) interest in the Premises

8. EXTENSION OF CLOSING

If the Seller shall be unable to give title to Buyer, or to make conveyance, or to deliver possession of the Premises, all as in accordance with this Agreement, or if at the time of the Closing, the Premises do not conform with the provisions of this Agreement, then the Seller shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the Premises conform to the provisions hereof, as the case may be, in which event the Closing hereunder shall be extended by thirty (30) days. It is understood and agreed that Seller shall not be under any obligation to attempt to cure by litigation or otherwise any defect which may be found to exist in the title to the Premises or to remove any encumbrances upon the title to the Premises not voluntarily placed thereon by the Seller subsequent to the date hereof or to correct any violations of subdivision, plat, zoning, building, minimum housing standard regulations or other similar restrictions or regulations or to otherwise spend more than Five Thousand Dollars ($5,000.00). This paragraph is also not intended to apply to any damage to the Premises caused by fire or other casualty, as to which the provision of Section 10 shall apply. The Buyer may, however, with the Seller's consent, elect to waive any such defects and accept such title to the Premises as the Seller is able to convey, without any warranty as to such conditions and without a reduction of the Purchase Price, and the acceptance of the Deed by the Buyer shall be deemed full performance and discharge of all the obligations of the Seller under this Agreement.. If at the end of the thirty (30) day period, Seller remains unable to give title to Buyer, or to make conveyance, or to deliver possession of the Premises, all as in accordance with this Agreement, Buyer shall have the option of extending the Closing an additional thirty (30) days to enable Seller at no additional expense to Seller to remove any defects in title, make the Premises conform to the provisions hereof and deliver possession as provided herein, or terminate this Agreement, whereupon the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder.

9. SELLERS' TENDER OF DEED

Except as otherwise expressly set forth herein, the tender of the Deed by the Seller and acceptance by Buyer shall be deemed full performance and discharge of every agreement and obligation of the Seller contained or expressed in this Agreement. The Seller shall be responsible for the payment of all statutory recording fees.

10. INSURANCE

Until delivery of the Deed to Buyer, the buildings on the Premises as applicable shall be insured by Seller and the other cotenants of the Premises against loss by fire under the same policy as exists at present, and in case of any loss or other casualty in an amount less than Ten Thousand ($10,000.00) Dollars occurring between the date of this Agreement and the delivery of the Deed, Buyer shall remain bound to purchase the Premises and Seller agrees to pay over or assign to Buyer upon payment of the remainder of the Purchase Price, Seller's tenant-in-common interest in all sums recovered or recoverable on account of said insurance, plus the deductible amount, if any, unless the Seller and the other tenants-in-common shall have restored the Premises to their former condition in which event the proceeds shall be retained by Seller. In the event of any loss or casualty occurring after Court approval of this Agreement and prior to delivery of the Deed in an

amount in excess of Ten Thousand Dollars ($10,000.00), the Seller shall have the obligation of (a) restoring the Premises to the same condition in which they were on the date of this Agreement, reasonable wear and tear excepted if agreed to by Seller's tenants in common; (b) reducing the Purchase Price by the amount of such damage based on Seller's tenant in common interest, as said amount may be agreed to by the parties; or, (c) seeking a determination from the Court as to the treatment of such loss or casualty; provided however, that in the event of such damage in excess of Ten Thousand ($10,000.00) Dollars and the failure to Seller to restore the Premises as aforesaid, Buyer may terminate this Agreement by giving written notice of its election to terminate within (10) days of Buyer's receipt of written notice from Seller that a loss of casualty in such amount has occurred and Seller will not restore the Premises as aforesaid.

11. DEFAULT

If the Buyer shall default in the performance of Buyer's obligations hereunder, the Seller shall, have the right to retain the deposit and resell the Premises without notice to the Buyer and other damages as Seller's sole and exclusive remedy at law and in equity. If Seller shall default in the performance of Seller's obligations hereunder, the Buyer shall be entitled to the Deposit and no other damages at law or in equity.

12. BROKERS AND AGENTS

Buyer warrants and represents that no real estate broker other than Hayes & Sherry initiated or otherwise brought about this transaction. Buyer agrees to indemnify the Seller against, and shall hold the harmless from any and all cost, expense or liability based upon or related to a claim for a brokerage commission or finders fees in connection with the transaction contemplated hereby to the extent such liability shall be based upon arrangements or agreements made or claimed by third parties to have been made by or on behalf of the Buyer, and not disclosed in this Agreement. Seller shall pay the commission due to Hayes & Sherry after Court approval.

13. NOTICES

All notices as required in this Agreement must be in writing. Any notice shall be deemed to have been properly given, rendered or made if sent by registered or certified mail or by Federal Express or other comparable commercial overnight delivery service, postage prepaid, addressed to the other party at the addresses set forth in the first paragraph of this Agreement and shall be deemed to have been given, rendered or made on the day so delivered; or in the case of failure to deliver by reason of changed address of which no notice was given, or refusal to accept delivery, as of the date of such failure as indicated on the return receipt or by notice of the United States Post Office.

14. BUYER REQUIRED TO COMPLY WITH ZONING

Buyer is obligated to comply with any and all state and local real estate ordinances, statutes and/or regulations, commercial or otherwise.

15. RADON GAS

Radon gas has been determined to exist in the State of Rhode Island. The Premises contain residential dwelling units. The Buyer acknowledges that the Seller has no obligation whatsoever to perform any tests for radon, and that such testing, if any, shall be solely at Buyer's expense. The Seller makes no representation whatsoever concerning the existence or absence of radon in the Premises.

16. LEAD POISONING DISCLOSURE

The Premises contain residential dwelling units. The Buyer acknowledges that the Seller shall have no obligation whatsoever to perform any risk assessments or inspections for lead-based paint hazards within the Premises. Any such inspections or risk assessments shall be done solely at the Buyer's election and expense. Buyer acknowledges that Buyer has been advised that Seller has no reports or information concerning lead-based hazards within the Premises, and that Seller makes no representations concerning the existence or absence of lead-based paint within the Premises.

17. NO ENVIRONMENTAL CONDITION

Buyer acknowledges that Buyer may conduct any environmental site assessments or studies of any kind which Buyer deems advisable and/or necessary, at Buyer's sole expense. However, Buyer expressly acknowledges and agrees that the conveyance contemplated hereunder is not conditioned in any way whatsoever upon the Seller's conducting or performing any cleanup or remedial action of any kind or nature on the Premises. Copies of all reports and studies shall be delivered to the Seller. If Buyer, in Buyer's sole and absolute discretion, determines that the environmental condition of the Premises is unsatisfactory to Buyer, then Buyer shall have the right to terminate this Agreement in accordance with the notice provisions hereof, the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder.

18. CLOSING/CONVEYANCE NOT SUBJECT TO ANY CONTINGENCIES

Subject to the Buyer's ability to conduct due diligence inspections as set forth in Section 24 and all the rights of Buyer and the provisions of Section 26 and the rights of Buyer under those sections, Buyer expressly acknowledges and agrees that neither the Closing nor the conveyance contemplated hereunder are conditioned in any way whatsoever upon the Buyer or the Seller complying with any contingencies, including, but not limited to Buyer financing, structural or environmental inspections, zoning, licensing and/or any other contingency of any kind or nature relative to the Premises.

19. WETLANDS DISCLOSURE

All or part of the Premises may have been previously determined by the Rhode Island Department of Environmental Protection to be a wetland, bank, bog, salt marsh, swamp, meadow, or flat as these terms are defined in Chapter 1, Section 20 of Title 2 of the Rhode Island General Laws. The parties hereto acknowledge that it shall be Buyer's sole responsibility to conduct any independent examination to determine whether the Premises are in an area determined to be a wetlands

pursuant to such statutory provisions.

20. [Intentionally Deleted]

21. NO WARRANTIES AND REPRESENTATIONS AND NO RELIANCE ON OTHERS

Buyer has entered into this Agreement based on Buyer's independent review and investigation of the Premises and not on any representation made by the Seller or any of Seller's agents or representatives. Buyer specifically acknowledges that the Premises shall be sold to Buyer "as is", "where is", and "with all faults" and that no warranties or representations or covenants of any kind, expressed or implied, have been or will be made by Seller or any other party with respect to the physical, operating or any other condition of the Premises, or repair of the Premises, or utilities or sewer systems servicing the Premises, and no reliance is made by the Buyer upon any statements or representations not made in this Agreement.

22. PROHIBITION AGAINST RECORDING

This Agreement may not be recorded in the Records of Land Evidence of the municipality in which the Premises is located. IN THE EVENT OF ANY RECORDING OF THIS AGREEMENT BY BUYER, AT THE OPTION OF THE SELLER, THE BUYER WILL CONCLUSIVELY BE DEEMED IN DEFAULT HEREUNDER ENTITLING THE SELLER TO EXERCISE ALL RIGHTS AND REMEDIES HEREUNDER FOR BUYER'S DEFAULT and any third party may conclusively rely upon an affidavit executed and recorded by the Seller in said Land Evidence records stating the Seller has elected to hold the Buyer in default for such recording, as conclusively establishing that the Buyer has no further right, title, or interest under this agreement or to the Premises, all of which will be deemed released and conveyed to Seller. Any default by Buyer under the terms of this provision, shall be subject to the provisions of Section 11.

23. NO PERSONAL LIABILITY

Notwithstanding anything herein to the contrary, the Trustee's execution of this Agreement is solely in his capacity as Trustee and shall not render the Trustee personally liable in any way whatsoever.

24. DUE DILIGENCE

Notwithstanding anything to the contrary herein, Buyer shall have forty-five (45) days (the "Due Diligence Period") from the date of Court approval of this Agreement to perform any due diligence investigations of the Premises and the Seller's interest therein which Buyer, in its sole and absolute discretion, deems material to its decision to purchase the Seller's Interest in the Premises, including but not limited to surveys, title examinations, structural inspections, environmental and hazardous waste inspections, lead paint inspections, radon inspections, review of leases and leasing arrangements, zoning and all business and financial agreements with covenants including but not limited to management of the Premises. If Buyer, in its sole and absolute discretion, determines as a result of its due diligence activities that the purchase of Seller's Interest in the Premises is not in the best interest of the Buyer, the Buyer shall be under no obligation to purchase

Seller's Interest and may terminate this Agreement, provided, however, that Buyer must provide Seller at his address set forth above with written notice of its election not to purchase Seller's Interest within ten (10) days from the conclusion of its due diligence period.

25. MANAGEMENT OF THE PROPERTY

From the date hereof until the delivery of the deed to the Premises transferring Seller's Interest to Buyer, Seller will provide Buyer with an opportunity to review and comment on all transactions requiring material, financial and/or legal decisions, and Seller agrees not to make any such material decision without the prior review of Buyer. It is understood and agreed by Buyer, however, that Seller does not hold a majority interest in the Premises. Buyer shall not unreasonably withhold its approval of such material decisions.

26. REQUIRED APPROVALS: Anything to the contrary herein notwithstanding, the conveyance and transfer of the Premises is expressly made subject to and conditioned upon:

26.1. Court Approval. Seller obtaining approval of the United States Bankruptcy Court, District of Rhode Island (the "Court"), in the bankruptcy proceeding pending before that Court as docket number B.K. 04-101332 after hearing with notice to all interested parties, authorizing and ordering the sale free and clear of all such liens, mortgages, security interests, claims, encumbrances and interests. If such approval is not obtained by Seller, Seller must immediately give written notice thereof to Buyer and this Agreement shall terminate upon receipt of such notice by Buyer, the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder. Buyer acknowledges and understands that the Seller is obligated to submit to the Court for its review and consideration any other offers for the Premises received by the Seller subsequent to this Agreement for a purchase price higher than or on more advantageous terms than those set forth herein for the Court's review and consideration. Buyer shall be under no obligation to purchase the Premises at such higher price or on more advantageous terms than those set forth herein.

26.2. Corporate Approval: Buyer obtaining approval of this Agreement from its Advisory and Executive Committee on or before September 16, 2006 subject to ratification by the Corporation of Brown University on or before October 10, 2006, 5:00 PM. If such approval and ratification is not obtained by Buyer, Buyer must immediately give written notice thereof by October 10, 2006, to Seller and this Agreement shall terminate upon receipt of such notice by Seller, the deposit shall be returned to Buyer, and the parties shall have no further obligations hereunder.

27. INTEGRATION

The parties hereto agree that this Agreement contains the entire agreement between the parties and that it is subject to no understandings, conditions or representations other than those expressly stated herein. Any modification of this Agreement or additional obligations assumed by either party in connection with this Agreement shall be binding only if evidenced in writing and signed by each party or by an authorized representative of each party.

28. PARTIAL INVALIDITY

The invalidity of one or more phrases, sentences, clauses, articles or paragraphs contained in this Agreement shall not affect the remaining portions of this Agreement or any part thereof, and in the event that one or more of the phrases, sentences, clauses, articles or paragraphs contained in this Agreement shall be declared invalid by the final order, decree or judgment of a court of competent jurisdiction, this Agreement shall be construed as if such invalid phrases, sentences, clauses, articles or paragraphs had not been inserted in this Agreement.

29. GOVERNING LAW

This Agreement shall be governed by the laws of the state of Rhode Island and the United States Bankruptcy Court for the District of Rhode Island shall adjudicate all disputes hereunder.

30. CAPTIONS

The captions or headings of the paragraphs hereof are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Agreement.

31. COUNTERPARTS

This Agreement may be executed in one or more counterparts any or all of which shall constitute one and the same instrument.

WITNESS the signatures of the above parties on the date set forth below.

SELLER:

[signature], Trustee

WITNESS

Joseph M. DiOrio, in his capacity
As Chapter 7 Trustee of the
Bankrutpcy Estate of Arnold
Kilberg, and not individually.
Date: 10-19-06

BUYER: Brown University

[signature]

WITNESS

By: [signature]
Name: Elizabeth C. Huidekoper
Title: Executive VP for Finance & Administration

EXHIBIT A

# EXHIBIT A

(Legal Description)

PARCEL I: THAT LOT OF LAND, WITH ALL BUILDINGS AND IMPROVEMENTS THEREON, SITUAT
THE CITY OF PROVIDENCE IN THE STATE OF RHODE ISLAND, ON ANGELL STREET A SHORT D
WESTERLY FROM THAYER STREET, BOUNDING NORTHERLY ON SAID ANGELL STREET; EASTER
LAND NOW OR LATELY OF HENRY F. MCCUSKER AND WIFE, SOUTHERLY ON FONES ALLEY, AN
WESTERLY ON LAND NOW OR LATELY OF CHURCHILL HOUSE CORPORATION. SAID LOT MEASU
FORTY (40) FEET ON ANGELL STREET AND HOLDING THAT WIDTH EXTENDS BACK THEREFROM
ONE HUNDRED SIXTEEN (116) FEET.

SAID LOT CORRESPONDS TO OR SUBSTANTIALLY TO LOT NO. 38 (THIRTY-EIGHT) ON THAT PLA
ENTITLED, "A PLAN OF PART OF THE ESTATES OWNED BY THE HEIRS OF NATHAN & RUFUS
WATERMAN SURVEYED & PLATTED BY S. BARRETT CUSHING 1833", RECORDED IN THE OFFICE O
RECORDER OF DEEDS IN SAID CITY OF PROVIDENCE IN PLAT BOOK 1 AT PAGE 4 AND (COPY) ON
CARD NO. 2.

THIS CONVEYANCE IS MADE SUBJECT TO A TUNNEL EASEMENT GRANTED BY JOSEPH M. BENNETT
THE RHODE ISLAND COMPANY BY DEED DATED OCTOBER 9,1914 AND RECORDED IN SAID RECOR
IN BOOK 543 AT PAGE 436.

PARCEL II: THAT STRIP OF LAND, SITUATED ON THE SOUTHERLY SIDE OF ANGELL STREET IN THE CITY OF PROVIDENCE IN THE STATE OF RHODE ISLAND, BOUNDED AND DESCRIBED AS FOLLOWS: BEGINNING AT A POINT IN THE SOUTHERLY LINE OF ANGELL STREET AT THE NORTHWESTERLY CORNER OF LOT NO. 39 (THIRTY-NINE) ON THAT PLAT ENTITLED "PLOT OF PART OF AN ESTATE OWNED BY THE HEIRS OF NATHAN AND RUFUS WATERMAN SURVEYED AND PLOTTED MARCH 16,1849", RECORDED IN THE OFFICE OF THE RECORDER OF DEEDS IN SAID CITY OF PROVIDENCE I
PLAT BOOK 3 AT PAGE 32 AND (COPY) ON PLAT CARD NO. 82 AND AT THE NORTHEASTERLY CORNER OF LAND NOW OR LATELY OF CHESTNUT RIDGE CORP., SAID POINT BEING ABOUT ONE HUNDRED TE
(110) FEET WESTERLY OF THE WESTERLY LINE OF THAYER STREET; THENCE EASTERLY BOUNDING NORTHERLY ON ANGELL STREET TWO AND 06/100 (2.06) FEET TO A CORNER; THENCE TURNING AN INTERIOR ANGLE OF 89° 10' AND RUNNING SOUTHERLY SIXTY-FIVE AND 78/100 (65.78) FEET TO A CORNER; THENCE TURNING AN INTERIOR ANGLE OF 90° 50" AND RUNNING WESTERLY ONE AND 10/100 (1.10) FEET TO SAID LAND NOW OR LATELY OF CHESTNUT RIDGE CORP.; THENCE TURNING AT RIGHT ANGLES AND RUNNING NORTHERLY BOUNDING WESTERLY ON THE LAST MENTIONED LAND SIXTY-FIVE AND 77/100 (65.77) FEET TO ANGELL STREET AND THE POINT OF BEGINNING.

EXHIBIT B

TRUSTEE'S DEED

KNOW ALL MEN BY THESE PRESENTS, That I, Joseph M. DiOrio, having a mailing address for the purposes of this Agreement of 10 Dorrance Street, Suite 1200, Providence, Rhode Island, 02903, in my capacity as the duly appointed and qualified Chapter 7 Trustee of the bankruptcy estate of Arnold Kilberg in Case Number 04-10632-ANV, and not individually, pending in the United States Bankruptcy Court for the District of Rhode Island, having been duly authorized by an Order issued by the United States Bankruptcy Court for the District of Rhode Island on September ___, 2006, a copy of which is attached hereto as Exhibit A (the "Order"), to sell certain real estate described below of the estate free and clear of liens pursuant to 11 U.S.C. § 363, and by virtue of the power and authority vested in me in my capacity as Trustee, for good and valuable consideration, do hereby grant, bargain, sell, transfer and convey to for purposes of this agreement to Brown University, Box 1902, Providence, Rhode Island, their successors and assigns forever, all of my right, title and interest in and to Arnold Kilberg's fifty-percent (50%) tenant-in-common interest in and to the real property described below:

DESCRIPTION OF PREMISES

(See Exhibit B attached hereto and made a part hereof)

To have and to hold the described Premises, with the appurtenances, and every party of the same, to the purchaser, its successors and assigns, to

its and their own proper use forever, as fully and absolutely as I as Trustee can and ought to do under the Bankruptcy Code and under the Order.

This conveyance by the Trustee in bankruptcy is such that no withholding is required pursuant to R.I. Gen. Laws §44-30-71.3.

Said Premises is also conveyed subject to easements of record, restrictions of records, and taxes assessed as of December 31, 2005.

__________________________
WITNESS

__________________________
Joseph M. DiOrio, in his capacity as Chapter 7 Trustee of Arnold Kilberg and not individually.

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence on the ___ day of September, 2006, before me personally appeared Joseph M. DiOrio, Chapter 7 Trustee of the bankruptcy estate of Arnold Kilberg, to me known and known by me to be the party executing the foregoing instrument and he acknowledge said instrument by him executed to be his free act and deed and the free act and deed of him in said capacity.

__________________________
NOTARY PUBLIC
My Commission Expires: ______

UNITED STATES BANKRUPTCY COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| In re:<br><br>ARNOLD KILBERG | Case No. 04-10632<br>Chapter 7 |

ORDER AUTHORIZING TRUSTEE TO SELL CERTAIN ASSETS FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §363

This matter came to be heard on the 12th day of October, 2006, upon Notice of Intended Sale of the Debtor's 50% Tenant in Common Interest in 165 Angell Street, Providence, Rhode Island (the "Property") filed by the Trustee, Joseph M. DiOrio. Upon consideration thereof, and after hearing thereon, it is hereby:

ORDERED, ADJUDGED AND DECREED:

1. That the Court specifically grants the requested relief of the Trustee to allow the sale to proceed in accordance with the Trustee's Notice of Intended Sale and 11 U.S.C. §363;

2. That no objections to the Notice of Intended Sale were filed by any party in interest;

3. That good and sufficient notice of the intended sale was given to all necessary parties in interest, creditors and secured parties in accordance with 11 U.S.C. §363 and Bankruptcy Rule 6004;

4. That the Trustee is specifically authorized to execute the Real Estate Purchase and Sale Agreement (the "Agreement") attached to the Notice of Intended

Sale and to sell the estate's 50% tenant in common interest in the Property as set forth in the Notice of Intended Sale and in accordance with the terms of the Notice of Intended Sale;

5. That the Trustee is authorized to convey to Brown University ("Brown"), free and clear of all liens, mortgages, claims, interests and encumbrances for the purchase price of $650,000.00, of which a deposit (the "Deposit") of $50,000.00 has been paid, this estate's 50% tenant in common interest in and to the Property, as further described in the Agreement attached hereto as Exhibit A and upon the terms and conditions of the Agreement;

6. That the Trustee is authorized to conduct a closing of the sale of the Property in accordance with the Agreement at the Office of the Trustee, or at such other time and place as the Trustee and Brown shall mutually agree;

7. That Brown is a good faith purchaser entitled to the protections of 11 U.S.C. §363(m);

8. That the Trustee be, and he hereby is, authorized and directed to execute such deeds, bills of sale, assignments and other documents necessary to appropriate to complete the sale and the relief granted hereby, and is authorized and empowered to take such action and to issue, execute and deliver such other documents and instruments as may be necessary to carry out the transactions, authorizations and deliveries authorized in this Order; and

9. All mortgages, liens and other encumbrance, if any, against the estate's interest in the Property shall attached to the proceeds of the sale to which the estate is entitled.

ENTERED as an Order of this Court on this 19 day of October, 2006.

ORDER:

By: H. D'Agostino

ENTER:

Arthur N. Votolato
U.S. Bankruptcy Judge

Presented by:

/s/ Joseph M. DiOrio
Joseph M. DiOrio, Esq.
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, Rhode Island 020903

Entered on docket: 10/19/06

ALL-STATE D

BROWN

ABIGAIL RIDER
Director
Real Estate & Administrative Servi

November 30, 2006

VIA HAND-DELIVERY
CC: VIA FEDERAL EXPRESS

Joseph M. DiOrio, Chapter 7 Trustee
of the Estate of Arnold Kilberg
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, Rhode Island 02903

*Re:* *165 Angell Street, Providence, Rhode Island (the "Property")*

Dear Mr. DiOrio:

Brown University has completed its due diligence on 165 Angell Street, and has identified several serious deficiencies that would need to be resolved for the University to proceed with the proposed transaction. Therefore in accordance with Section 24 of the certain Real Estate Purchase Agreement dated October 19, 2006, Brown declines to purchase the Trustee's 50% interest in the property.

Although in general the building is well-maintained and it is clear that the owners pay attention to and carefully manage their property, it is materially out of compliance with several applicable codes. Correcting these violations of applicable law as a new owner would be too expensive for Brown to undertake given the price stipulated in the Real Estate Purchase Agreement for your interest in the property.

Although the University is exercising its right to terminate the existing agreement for the purchase of the property in its current condition, listed below are three approaches that might make it possible for Brown to undertake the purchase as the University remains interested in acquiring your interest. None of these approaches constitutes an offer and none is binding on Brown; we put them forth for discussion purposes only:

1. The Trustee and 56 Associates and 57 Associates could make the repairs/alterations necessary to bring the property into compliance with the relevant building and safety codes and obtain the necessary zoning variances,

Mr. DiOrio
Page Two
November 30, 2006

occupancy permits and safety inspections required for the current uses as documented by the leases prior to Brown completing the purchase for $650,000.00.

2. The Trustee could reduce its price by the estimated cost of the repairs/alterations necessary to bring the property into compliance and obtain the consent (form to be subject to review and prior approval of Brown) of 56 Associates and 57 Associates to permit Brown to make such repairs/alterations and to undertake such negotiations with current lessees as might be necessary to bring the building into compliance with applicable codes (e.g., some reduction of rentable area in exchange for a pro rata reduction in rent in order to accommodate expanded space for building mechanical and electrical systems) or termination of lease(s) if zoning variances for non-conforming uses cannot be obtained.

3. 56 Associates and 57 Associates could sell their interest to Brown at a mutually agreed-upon price at the same time that the Trustee's interest passes to Brown, and Brown would undertake to bring the property into compliance with applicable codes and regulations at its own expense. In this case, subject to the negotiation, execution and delivery of a mutually satisfactory purchase and sale agreement, Brown would expect to pay the Trustee (and by extension the other 50% owners) somewhat more for each 50% interest than the price previously offered to the Trustee because it would be purchasing a whole property rather than a half-interest; but Brown would expect to pay less than 50% percent of the appraised value of the property for each interest, due to the substantial expenses that must be incurred to make it code-compliant.

We regret that we cannot acquire your interest in the property under the current Real Estate Purchase Agreement, and want to particularly thank you for your time and effort in trying to bring this transaction to completion.

Sincerely,

*UNITED STATES BANKRUPTCY COURT*
*FOR THE DISTRICT OF RHODE ISLAND*
*380 Westminster Street, 6th Floor*
*Providence, RI 02903*
*www.rib.uscourts.gov*
*(401)626-3100*

---

In Re: **Arnold Kilberg**

Debtor(s)

BK No. **1:04-bk-10632**

Chapter **7**

AP No. **1:05-ap-01011**

**Joseph M DiOrio** et al
Plaintiff(s)

v.

**56 Associates, L.P.** et al
Defendant(s)

Judge: **Arthur N. Votolato**

---

## *JUDGMENT ORDER*

Pursuant to the order entered this date, judgment is hereby entered regarding;

**Order Granting Complaint. See order for details**

Judgment #: 1:05–ap–01011 – 128 – 127

Susan M. Thurston
Clerk, US Bankruptcy Court

Dated: 6/14/07
Document Number: 128 - 127

By: **HAD**
Deputy Clerk

judgmentap.jsp Form 406

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| In re: | : | |
| ARNOLD KILBERG<br>Debtor | : | BK No. 04-10632<br>Chapter 7 |
| | : | |
| JOSEPH M. DIORIO, CHAPTER 7 TRUSTEE OF ARNOLD KILBERG<br>Plaintiff | : | |
| v. | : | A.P. No. 05-1011 |
| 56 ASSOCIATES, a Rhode Island Limited Liability Partnership, and 57 ASSOCIATES, a Rhode Island Limited Liability Partnership<br>Defendants | :<br>: | |

**ORDER GRANTING TRUSTEE'S REQUEST TO CONDUCT A § 363(h) SALE**

APPEARANCES:

Joseph M. DiOrio, Esq.
Attorney for Plaintiff
LAW OFFICE OF JOSEPH M. DiORIO, INC.
10 Dorrance Street, Suite 1200
Providence, Rhode Island 02903

William J. Delaney, Esq.
Attorney for Defendants
TILLINGHAST LICHT LLP
Ten Weybosset Street
Providence, Rhode Island 02903

BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge

The Trustee wishes to sell the entire fee simple interest, pursuant to 11 U.S.C. § 363(h), in real estate at 165 Angell Street, Providence, Rhode Island (the Property), in which the Trustee and the Defendants are co-owners. Based upon the evidence and the entire record in this proceeding, and for the reasons argued by the Trustee on May 7, 2007, which we adopt and incorporate herein by reference as our findings of fact and conclusions of law, the relief requested by the Trustee is GRANTED. The Defendants' arguments in opposition are all without merit, they are rejected, and the Trustee is authorized to sell the estate's 50% interest in the property free of the respective 25% interests of 56 Associates, LLP, and 57 Associates, LLP. In addition to the reasons advanced by the Trustee, we add the following in support of this decision:

Section 363(h) authorizes the sale of property in which the estate owns less than a 100% interest, over a co-owner's objection, if certain conditions are met. *See Gray v. Burke (In re Coletta Bros.)*, 172 B.R. 159, 164 (Bankr. D. Mass. 1994):

(1) that partition in kind of such property among the estate and such co-owners is impracticable;

(2) that the sale of the estate's undivided interest in such property would realize significantly less for the

estate than sale of such property free of the interests of such co-owners;

(3) that the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) that such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

Pursuant to the Joint Pre-Trial Order filed by the parties, elements 1 and 4 have been satisfied. As to the first element, the parties stipulate that: "Partition in kind by subdivision of the Property into separate and distinct lots is impracticable." Joint Pre-Trial Order, Doc. No. 119, p. 2, ¶ j. While this stipulation should end any discussion of item No. (1), the Defendants argue, nevertheless, that partition in kind is practicable because the building can be converted into condominiums. To begin with, the argument contradicts the agreed facts in the Join Pre-Trial Order. However, overindulging the Defendants and addressing their argument on the merits, it still is rejected. The Plaintiff's valuation expert, Peter Scotti, testified convincingly that although conversion to condominium

units is physically *possible*, doing so would not result in the highest and best use of the property, i.e., selling individual condominium units over time would produce significantly fewer net dollars than by marketing the property as it currently exists - as a single parcel, best suited for mixed use. Scotti also stated that his calculations do not even include the costs required to do a condominium conversion, and with that dollar item added into the equation the net profit from the sale of individual condominium units makes even less economic sense. There is no competent evidence to contradict Scotti's conclusions. Given the significant negative impact that condominium conversion would have on the value of the property, I find that route is not a reasonable alternative, and the first element of Section 363(h) is resolved in favor of the Trustee.

The Trustee has clearly met his burden regarding the second element - i.e., that the sale of only the Trustee's one-half interest would yield significantly less for the estate than a sale of the whole property. The Defendants argue that there is no evidence in the record regarding the value of the estate's one-half interest. I disagree. On that issue, we have the best evidence possible - Brown University, the most logical and the *only* known interested party, on September 9, 2006, offered the Trustee $650,000 for the estate's one-half interest, but after conducting

its due diligence, decided not to purchase the Trustee's fractional interest. Based on the Brown University experience, together with the absence of any other offers for a fractional share, I find that the value of the estate's one-half interest in this property is less than $650,000. Couple this with the fact that the Defendants' own expert testified that the value of the entire property exceeds $2.2 million, and the math is quite revealing. The uncontradicted evidence is that the estate could receive as much as $450,000 more for its interest by selling the whole, so the Trustee easily satisfies this element. Although Mr. Paolino persistently objects to the Trustee's recommendation, it should not be forgotten that any financial benefit resulting from a § 363 sale will inure equally to his benefit.

The third element involves a balancing of harm test, i.e., the benefit to the movant of selling the whole must outweigh the harm, if any, to the co-owner. Again, I find that the Trustee has easily met his burden. The harm alleged by the Defendants is that a sale of their interest will result in substantial capital gains, which will trigger a large tax liability. Joseph Paolino, Sr., the principal of the Defendant LLPs, and a virtual icon in the Providence real estate market who makes his living buying, selling, renting, developing, etc., acknowledged that selling real estate for profit is a good thing. He is also familiar with so-called IRS

Code "1031 exchanges" which allow investors to buy and sell property without incurring capital gain tax liability. In fact, his limited liability partnerships (the Defendants) actually purchased their present interest in the subject property through just such a tax deferred exchange. Because Mr. Paolino, for reasons of nostalgia or whatever, chooses not to avail himself of the benefits of Section 1031 of the Internal Revenue Code, does not equate to *harm* under Section 363(h). Based upon the entire record in this lengthy and contentious dispute, I find that the benefit of a sale of the entire Angel Street property as a single entity will outweigh the harm, if any, to the co-owners.

Finally, as to the fourth element, the parties stipulated in the Joint Pre-Trial Order that: "The Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light or power." Joint Pre-Trial Order, Doc. No. 119, p. 2, ¶ I.

Accordingly, in light of the foregoing discussion, the Trustee is authorized to sell 165 Angell Street free of the interests of the Defendant co-owners.

As an accommodation to them I will assume that the Defendants have filed a Motion for Stay Pending Appeal, and DENY the same on the ground that the Defendants have not established a basis for obtaining a Temporary Restraining Order. *In re Public Service Co.*,

116 B.R. 347, 348 (Bankr. D.N.H. 1990). This will save the Defendants time (which equals legal fees), and at least one step in the appeal process. If they decide to take that route, they may request such relief from the District Court.

Enter judgment consistent with this Order.

Dated at Providence, Rhode Island, this 14th day of June, 2007.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 6/14/2007

Attorney or Appellant Name, Address, Telephone, and Fax Number

56 Associates, RI LLP
57 Associates, RI LLP

FOR COURT USE ONLY

*Attorney for Appellant* William J. Delaney

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

In re: Arnold Kilberg

Debtor (s)

Debtor's Social Security No(s). XXX-XX-0940

CHAPTER 7

CASE NUMBER 04-10632

Employer's Tax Identification Nos. [if any]

ADVERSARY NUMBER 05-1011

## NOTICE OF APPEAL

1. NOTICE IS HEREBY GIVEN that the (check only one box) ☐ plaintiff ☒ defendant or ☐ other party (specify name of party) 56 Associates, RI LLP 57 Associates, RI LLP, appeals under 28 U.S.C. section 158(a) or (b) from the judgment, order, or decree of the bankruptcy judge (describe judgment, order or decree) Order Granting Complaint entered in this adversary proceeding or other proceeding (describe other proceeding) ______ on the 14th day of June, (year) 2007.

2. The names of all parties to the judgment, order, or decree appealed from and the names, addresses, telephone, and fax numbers of their respective attorneys are as follows:

(Print or type names, addresses, telephone, and fax numbers)

Joseph M. DiOrio, Chapter 7 Trustee of Arnold Kilberg

Joseph M. DiOrio, Esq.
Law Office of Joseph M. DiOrio, Inc.
10 Dorrance Street, Suite 1200
Providence, RI 02903
401-632-0911; 401-632-0751 (fax)

CONTINUED ON NEXT PAGE

Notice of Appeal - Page Two (2)
**Form 17**

| In re (SHORT TITLE) | |
|---|---|
| Arnold Kilberg, Debtor. | CHAPTER 7<br>CASE NUMBER 04-10632 ; 05-1011 |

56 Associates, RI LLP
57 Associates, RI LLP

William J. Delaney
Tillinghast Licht LLP
10 Weybosset Street, Suite 1000
Providence, RI 02903
401-456-1200; 401-456-1210 (fax)

Dated: June 16, 2007

/s/ William J. Delaney

Signature (*Attorney for Appellant or Appellant if not represented by an Attorney*)

(Print or type name, address, telephone and fax numbers)
William J. Delaney (#3643)
Tillinghast Licht LLP
10 Weybosset Street, Suite 1000
Providence, RI 02903
401-456-1200; 401-456-1210 (fax)

**If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party has a right to have the appeal heard by the district court. The appellant may exercise this right only by filing a separate statement of election at the time of the filing of this notice of appeal. Any other party may elect, within the time provided in 28 U.S.C. section 158 (c), to have the appeal**

# PROOF OF SERVICE

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

1. I am employed in the County of Providence, State of Rhode Island. I am over the age of 18 and not a party to the within action. My business address is as follows:

   Tillinghast Licht LLP
   10 Weybosset Street
   Providence, RI 02903

2. **Regular Mail Service:** On June 16, 2007, I served the documents described as: NOTICE OF APPEAL on the interested parties at their last known address in this action by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail at Providence, Rhode Island, addressed as set forth below.

   Joseph M. DiOrio, Esq.
   Law Office of Joseph M. DiOrio, Inc.
   10 Dorrance Street
   Providence, RI 02903

And by CM/ECF to Joseph M. DiOrio as well

☐ Addresses continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June 16, 2007

William J. Delaney
*Type Name*

/s/ William J. Delaney
*Signature*