UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

56 ASSOC. AND 57 ASSOC.,

Appellants,

v. C.A. Nos. 07-222L
07-260L
07-315L

JOSEPH M. DIORIO,
CHAPTER 7 TRUSTEE OF
ARNOLD KILBERG,

Appellee.

**MEMORANDUM AND ORDERS**

Ronald R. Lagueux, Senior District Judge.

These matters are before the Court on appeal from orders entered by the U.S. Bankruptcy Court for the District of Rhode Island in June and July 2007. In the first Judgment Order,[1] entered on June 14, 2007, Judge Arthur N. Votolato authorized the Trustee, appellee herein (hereinafter "the Trustee"), to sell, in its entirety, certain real property in Providence, Rhode Island, co-owned by Appellants and the bankrupt estate of the late Arnold Kilberg. Appellants, erstwhile business partners of Kilberg, are 56 Associates, LLP, and 57 Associates, LLP, (hereinafter "Appellants"), each of which owns 25% of the property located at 165 Angell Street. The Trustee holds the other 50% ownership interest as part of a tenancy-in-common established by Kilberg and Appellants more than twenty years ago.

[1] In the Bankruptcy Court, all three matters contested here are designated BK No. 1:04-bk-10632; AP No. 1:05-ap-01011.

Judge Votolato issued two follow-up orders on June 27 and June 29, first instructing Appellants to provide the Trustee with keys to the property so that he could show it to prospective purchasers, and then awarding the Trustee counsel fees for his legal costs associated with gaining access to the property. Appellants contest these orders as well. For reasons explained below, this Court affirms the rulings of the Bankruptcy Court.

**Standard of Review**

In reviewing a decision of the bankruptcy court, this Court may not set aside findings of fact unless they are "clearly erroneous, and due regard shall be given to the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013. The First Circuit has written that, "A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is left with the definite and firm conviction that a mistake has been committed." Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997). This Court reviews *de novo* the legal conclusions of the Bankruptcy Court. Id. at 785.

**Factual Background**

The factual findings stipulated to by the parties, and elicited at the multi-day hearing in Bankruptcy Court are set forth as follows. The property at 165 Angell Street is located just off Thayer Street in the commercially-valuable area

neighboring Brown University. It is a mixed-use property located on a 4,756 square foot lot, with a building which provides approximately 8,100 square feet of improved space. It currently houses a bar in the basement unit, a restaurant on the first floor, and eight efficiency apartments on the second and third floors.

After his appointment by the Bankruptcy Court in August 2004, the Trustee filed a complaint seeking to sell the entire fee simple interest. In the meantime, the Trustee proceeded to market his 50% interest in the property through Hayes & Sherry Real Estate Services. In September 2006, Brown University offered $650,000 for the half interest. However, the following month Brown withdrew its offer, in accordance with conditions attached to its initial offer. At the time, Brown indicated its interest in buying the property in its entirety. This withdrawn offer was the only offer made on the property during a marketing period which lasted over a year.

At trial, the parties' expert appraisers valued the property at between $1.85 million and $2.275 million, if sold as an entirety. The higher value was presented by Appellants' real estate expert. Although Appellants expressed their unwillingness to sell their portion of this valuable property, their principal, Joseph Paolino, Sr., conceded at trial that he and his family were not dependent on the income generated by the property for

their living expenses; that capital gains taxes were not a disincentive for him in his business transactions; and that, in any case, he was aware that capital gains taxes could be avoided by reinvesting the proceeds from the sale of this real estate in another property, via an IRS § 1031 property exchange.

**Applicable law**

The Bankruptcy Code states that when a debtor and a co-owner have an undivided interest in property, as tenants in common, joint tenants or tenants by the entirety, the Trustee may sell the property as a whole, as long as the following conditions are met:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light or power.

11 U.S.C.A. § 363(h).

***(1) Partition in kind***

The Court notes, as did the Bankruptcy Court, that the parties stipulated in a Joint Pre-Trial Order, dated April 23,

2007, that, "Partition in kind by subdivision of the Property into separate and distinct lots is impracticable." However, since that submission, Appellants have had second thoughts about waiving their objection on this prong of the test. They now proffer the argument that the building could be converted into condominiums, and so partition in kind is practicable. To support this untimely and inapposite argument, Appellants turn to the dictionary, arguing that 'impracticable' means 'impossible,' not 'impractical.' Because it is technically possible to convert 165 Angell Street into condominiums, they argue, partition in kind is practicable, and the sale of the building in its entirety is impermissible under 363(h).

The Bankruptcy Court found that converting the building to condominiums made no economic sense, and this Court concurs. Moreover, a condo conversion would not bring the Trustee any closer to his goals of maximizing the value of the estate for creditors, because he would then be a co-owner of ten individual units, rather than one unit. As the Trustee stated in his closing argument at trial: condominiumization is not a form of partition. Appellants' argument seems semantic at best; illogical and irrelevant at worst.

As for the semantic argument: the Court cannot refrain from pointing out that practicable is not a synonym for possible; nor is it a synonym for practical. Its meaning falls between the two

concepts of possibility and practicality, and incorporates both ideas - something that is not only possible, but also feasible and sensible. The Court affirms the conclusion of the Bankruptcy Court that, while condominiumization may be possible, it is not feasible, sensible or practicable. It is obvious that a property with multiple uses of this kind cannot be fairly partitioned.

***(2) Sale of estate's interest would realize significantly less***

The second condition that must be met before the Court can authorize a 363(h) sale is that the Trustee must demonstrate that the sale of his interest in the property would yield significantly less for the estate than a sale of the whole property. Based on the evidence provided at trial that the only offer for the half-share of the property was the one, subsequently retracted, made by Brown University, the Bankruptcy Court found that the value of the half-share was something less than $650,000. This is not clearly erroneous. Judge Votolato continued:

> Couple this with the fact that the Defendants' own expert testified that the value of the entire property exceeds $2.2 million, and the math is quite revealing. The uncontradicted evidence is that the estate could receive as much as $450,000 more for its interest by selling the whole, so the Trustee easily satisfies this element.

Judgment Order #1:05-ap-01011-128-127, page 4.

Appellants argue on appeal that the failure of the

Bankruptcy Court to assign specific values to the half-share and entire property "does not procedurally comport with 11 U.S.C. § 363(h)," and therefore undermines the validity of the Court's legal conclusion that the difference in value to the estate is significant. To support their argument, Appellants cite Calumet Farm, Inc., v. Black Chip Stables, 150 B.R. 664 (Bankr. E.D.Ky. 1992), which involved the sale of a thoroughbred stallion. In Calumet, Judge Joe Lee engaged in a mathematical calculation to determine which method of disposing of shares in the stallion's breeding future would prove most lucrative to the bankrupt's estate. Appellants herein argue that, without this precise mathematical calculation, Judge Lee would have been unable to decide whether or not the difference in methods was 'significant' or not. To elucidate the meaning of 'significant,' counsel for Appellants makes another trip to the dictionary.

The Trustee correctly points out that nothing in the statutory section requires the bankruptcy court to make precise numeric findings concerning the relative dollar values for the property's potential sale, whole or part. Nor does Calumet stand for this proposition. In that case, Judge Lee wrote,

> As previously recited, the evidence of the plaintiff suggests that the sale of Calumet's 20 shares in the stallion will produce an estimated $1.5 million for the estate. On the other hand, if offered for sale free of the interests of the co-owners, the stallion may be sold for as much as $7 million, or more realistically perhaps $5.6 million,

resulting in a distribution of....

150 B.R. at 669-670. This finding satisfies the Bankruptcy Code's requirements for the second prong of 363(h).

Moreover, Judge Lee's calculations are remarkably similar to the methodology employed by Judge Votolato in the present case, quoted above, wherein he established values within a range. Consequently, this Court affirms the factual findings and conclusions of law of the Bankruptcy Court, holding that the Trustee would realize significantly less from a sale of half the property than a sale of the whole property.

The proof of the pudding is in the eating. The records in this case establish that since the proceedings in Bankruptcy Court, the Trustee has received an offer from Brown University of $1.7 million for the property in its entirety. Appellee's Notice of Intended Sale of Real Property, Exhibit 4 (Real Estate Purchase Agreement), filed October 30, 2007. The Trustee's share of this sale will be $850,000 - at least $200,000 more than he would have realized from the sale of the half share, had it taken place. Therefore, on this prong of the § 363(h) test, the Bankruptcy court was clearly proven correct.

***(3) Benefit v. Detriment***

The next condition of a § 363(h) sale requires the Court to balance the benefit to the estate of selling the property as a whole against the detriment to the co-owners. For this prong,

once the Trustee has established that the estate would benefit more from the sale of the property in its entirety, the burden shifts to the co-owners to show the detriment they would suffer. Grabowski v. Sapir, 137 B.R. 1, 3 (S.D.N.Y. 1992).

At the bankruptcy court trial, Appellants put in little compelling evidence of detriment. The testimony provided by Joseph Paolino, Sr., included the loss of a reliable income stream. However, Paolino testified that he receives approximately $1.5 million annually in rental income from eight to ten other properties that he owns, and that he is not dependent on the income from 165 Angell Street to finance his retirement. Testimony about the deleterious impact of capital gains taxes was countered by evidence provided on the subject of IRS § 1031 property exchanges, and Paolino's own testimony that he did not mind paying taxes because that meant he was making money. At trial and in their appellate brief, Appellants argue that land is valuable and unique, and that this parcel is irreplaceable because little property changes hands in the Brown University area. As their counsel stated colorfully in his closing argument at trial, "Just because the man's rich doesn't mean that he can suffer a little bit of a haircut and oh, it's okay, it's okay." Judge Votolato did not find this argument persuasive, nor does this writer.

On appeal, Appellants recycle their Calumet argument from

Condition #2 above: that is, that Judge Votolato's failure to precisely evaluate the property renders his benefit/detriment determination procedurally inadequate, and clearly erroneous. In the Calumet case, Judge Lee reviewed extensive calculations put forth by the co-owners' accountant and found that the co-owners would suffer considerable detriment if the stallion were to be sold for less than $7.5 million. He went on to authorize the sale of all the shares of the horse, but with a minimum sales price of $6.3 million. Judge Lee pointed out that the Bankruptcy Code was not designed to afford the co-owners complete protection from detriment, financial or otherwise. 150 B.R. at 672.

> A sale at the price of $6,358,206 meets the requirement that the benefit to the estate must outweigh the detriment to the co-owners. Once it is established that the benefit to the estate of a sale is significant and further that the benefit to the estate "outweighs" the detriment to the co-owners, there is no further requirement that the benefit to the estate must exceed the detriment to the co-owners significantly as well. ... Under the language of the Code a sale that results in a considerable or substantial detriment to co-owners is permissible so long as the benefit to the estate outweighs the detriment.

150 B.R. at 675.

Appellants in the present case are correct that Judge Votolato did not establish a precise minimum sale price figure for the Angell Street property, whereby the proper balance of benefit and detriment would be struck. However, it is also true,

in the present case, that Appellants did not present the Bankruptcy Court with extensive calculations, as in Calumet, to demonstrate the detriment they would suffer from the forced sale of their interest in the property. At any rate, no set of calculations is required from either the Court or the Appellants by the Bankruptcy Code. All that is necessary is a finding that the estate would realize "significantly less" from a sale of the half rather than the whole, and a finding that the benefit to the estate outweighs the detriment to the co-owners. Both findings have been sufficiently demonstrated and established by the Bankruptcy Court. Consequently, this Court affirms the Bankruptcy Court's findings and conclusions of law on this element of 363(h).

***(4) Light and Power***

The parties also stipulated in the Joint Pre-Trial Order that: "The Property is not used in the production, transmission, or distribution for sale of electric energy or of natural or synthetic gas for heat, light or power." Fortunately, Appellants have not chosen to refute this stipulation.

**Adequate protection**

On appeal, Appellants argue that they have been deprived of adequate protection of their ownership interest in the property as required by the Bankruptcy Code in 11 U.S.C. § 363(e), which provides that the Bankruptcy Court will prohibit or condition a

sale of property in order to protect the interest of "an entity that has an interest in property ..." Appellants describe this requirement as mandatory and write:

> The pressing question raised from the Decision is how will the Appellants be adequately protected as a result of the Decision to permit the Appellee to sell all of the interest in the Property. More specifically, at what price will the Appellants be deprived of their adequate protection in the Property as provided under U.S.C. § 363(e). Respectfully, the Appellants submit that the Decision deprives the Appellants of adequate protection of their individual undivided one-half interests in the Property.

Brief of Appellants, p. 8-9.

As both Appellants and the Trustee explain in their briefs, this section of the Code is designed to protect the interests of creditors in property that is part of the bankrupt estate. The provision designed to protect co-owners, such as Appellants, is § 363(i), which provides that the co-owner of any property subject to a § 363(h) sale "may purchase such property at the price at which such sale is to be consummated." 11 U.S.C. § 363(i). Therefore, appellants can purchase the property at the highest price someone else is willing to pay for it, if they want to retain it and think that is a bargain price, or collect one-half the proceeds of sale. That appears to be a win-win situation. No further protection is necessary. Therefore, appellants' attempt to rely on § 363 (e) for protection is unavailing.

Because all four conditions set forth in 11 U.S.C. § 363(h) have been fulfilled, and Appellants' interests are adequately protected and have been adequately balanced against the interests of the Trustee, the Court affirms the Bankruptcy Court's authorization of the Trustee to sell 165 Angell Street free of the interests of Appellant co-owners.

**Keys and Fees**

At the completion of the adversary proceedings on the § 363(h) sale, the Bankruptcy Court held another hearing on the Trustee's Motion to Compel Defendants to Arrange for Full Access to the Property. This resulted in the entry of two additional orders by the Bankruptcy Court. On June 27, 2007, the Bankruptcy Court ordered Appellants to deliver a set of keys to 165 Angell Street to the Trustee, to enable him to show the property to prospective buyers. On June 29, 2007, the Bankruptcy Court ordered Appellants to pay the Trustee's counsel fees and costs in connection with the Motion to gain access to the property, because, the Court found, Appellants were interfering with the Trustee's efforts to market the property. The Appellants now appeal these Orders to this Court.

***Keys***

Appellants' primary complaint on appeal is that the Bankruptcy Court terminated the hearing in the midst of the extensive testimony of Joseph Paolino, Sr., and did not hear

final arguments. According to Appellants, the Bankruptcy Court's actions were improper and, therefore, its findings are clearly erroneous. Further, Appellants argue that the testimony that was permitted did not support the Court's conclusion that Appellants were being uncooperative with the Trustee.

The record before this Court is sparse. There are briefs submitted by both sides, as well as copies of the Motion and Objection that were filed in Bankruptcy Court. The Trustee has provided the Court with copies of the correspondence between him and Appellants' counsel wherein he requested Appellants to provide him with access to the property and Appellants declined to do so. Finally, the Court has copies of the two Orders entered by Judge Votolato: one ordering Appellants to give the Trustee a set of keys to the premises, and the other awarding counsel fees to the Trustee. The second Order describes this legal skirmish as "frivolous and unnecessary" and states that, "...Mr. DiOrio has alleged and clearly established that the Defendants have intentionally interfered with and hindered the Trustee in his efforts to adequately market the property." Beyond these documents, this Court has no transcript of the hearing in Bankruptcy Court; no proffer of the evidence that Appellants were allegedly barred from submitting; and no other evidence or argument to support a determination that the Bankruptcy Court committed clear error.

From the materials before the Court, it is apparent that the Bankruptcy Judge was satisfied that he had heard enough to conclude that Appellants had no substantive reason to refuse to cooperate with the Trustee's attempts to gain access to the property. Under the Federal Rules of Evidence, which regulate bankruptcy proceedings pursuant to Bankruptcy Rule 9017, Judge Votolato is empowered to exercise precisely this type of control over the proceedings. Fed. Rules of Evidence R. 611(a); Kelley v. Airborne Freight Corp., 140 F.3d 335, 347 (1st Cir. 1998). This Court can find no clear error in the Bankruptcy Court's methods, findings or conclusions on this issue.

***Fees***

On June 29, 2007, the Bankruptcy Court ordered Appellants to pay the legal costs and fees incurred by the Trustee in filing and prosecuting his Motion to Compel Defendants to Arrange for Full Access to the Property, upon finding that Appellants had "intentionally interfered with and hindered the Trustee in his efforts to adequately market the property." The Trustee then sent an invoice to Appellants, to which they objected. A hearing on the issue of attorneys' fees was held in Bankruptcy Court on July 25, 2007. The Bankruptcy Court approved the fees as detailed in the invoice, in the amount of $4,726.00, and ordered them paid. Appellants appeal the award of fees to this Court.

Appellants argue, as on the 'keys' issue, that the

Bankruptcy Court committed clear error when it terminated the hearing on the Trustee's Motion to Compel without hearing all the evidence Appellants were prepared to submit. In addition, Appellants argue that the Bankruptcy Court's findings that they interfered with the Trustee's marketing efforts are erroneous because they always cooperated fully with the Trustee. In support of this assertion, Appellants explain that they carried the burden of managing the property for over twenty years, and add inscrutable comments, such as, "It is rather unfortunate that the lengths by which reasonable men cannot work out their differences short of litigation." Brief of Appellants (CV-315L), page 3. As with the keys issue, Appellants do not include any transcript of the proceedings below, nor do they offer additional evidence to demonstrate their cooperation with the Trustee. The Court has only the correspondence between the parties in which Appellants notify the Trustee that they do not have keys to the bar or the restaurant, and that the Trustee should "take those steps necessary ... to gain access for viewing purposes..." Letter from William Delaney to Joseph DiOrio, May 18, 2007.

This correspondence, along with testimony presented on the June 27, 2007, were sufficient to convince the Bankruptcy Court that the Appellants were hindering the Trustee's efforts to show 165 Angell Street to prospective buyers. There is nothing in the record before this Court to demonstrate that the Bankruptcy Court

committed error in making this finding. Therefore, the Court affirms the Bankruptcy Court's factual findings on this matter.

The Order of the Bankruptcy Court does not provide the legal basis for the award of fees in this matter. The Trustee suggests that an award of counsel fees is inherent in the equitable powers of the court as described in 11 U.S.C. § 105(a), which states in part, "(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Trustee's argument finds ample support in case law. *See* Miller v. Cardinale, 280 B.R. 483, 494 (B.A.P. 9th Cir. 2002); In re Eliscu, 139 B.R. 883, 885 (N.D. Ill. 1992); In re Swofford, 112 F. Supp. 893, 896 (D. Minn. 1952). In this Circuit, however, the Bankruptcy Court in Massachusetts held that § 105(a) did not authorize "an award of attorneys' fees in the absence of specific statutory authority." In re Panaia, 65 B.R. 865, 869 (Bkrtcy. D.Mass. 1986).

Notwithstanding Panaia, this Court will rely on instructions it received from the First Circuit in Bessette v. Avco Fin. Services, Inc., 230 F.3d 439 (1st Cir. 2000). In that case, the First Circuit held

> ...that § 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have. Those contempt powers inherently include the ability to sanction a party.

230 F.3d at 445. The Bessette Court goes on to explain that "bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages..." Id. at 445.

With this support, this Court has ample justification for concluding that the Bankruptcy Court was acting properly and within its legal authority when it ordered Appellants to pay the Trustee's counsel fees in connection with the Motion to Compel. As Appellants have not objected to the amount of fees or any of the specific expenditures detailed, but only object to the fact of the award, this Court affirms the Bankruptcy Court's Order that Appellants pay the Trustee's itemized bill in full, $4,726.00.

**Conclusion**

For the reasons stated above, the Court denies all three appeals brought by 56 Associates, LLP, and 57 Associates, LLP. The Court hereby affirms the following Orders of the Bankruptcy Court: 1) authorizing the sale of 165 Angell Street free of the interests of Appellant co-owners; 2) instructing the Appellants to provide the Trustee with keys to the building and access to

the property; and 3) awarding counsel fees to the Trustee in the amount of $4,726.00.

Ronald R. Lagueux
Senior United States District Judge
January 30, 2008